UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID G. STERN,

    Petitioner

vs.

DAVID L. WINN, Warden
Federal Medical Center,
Devens,

    Respondent.

CIVIL ACTION NO. 04-10465NG

MAGISTRATE JUDGE Dein

RECEIPT # 54375
AMOUNT $ 5.00
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 3/8/04

### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 USC §§ 2241 & 2243

NOW COMES the above named Petitioner, DAVID G. STERN, Pro Se (herein-after the "Petitioner"), and moves this Court to construe his pleadings filed herein under the latitude delineated in the U.S. Supreme Court decision of **Haines v. Kerner**, 404 US 519 (1972) and pursuant to 28 USC §§ 2241 and 2243 to grant a Writ of Habeas Corpus as recited herein, and in support of said Petition states as follows:

### THE PARTIES

1.   The Petitioner, DAVID G. STERN, is a prisoner of the Federal Government, being held in custody/incarceration, under the color and authority of the statutory laws of the United States of America.

2.   That DAVID L. WINN, is the current Warden of the Federal Medical Center, Camp Devens where the Petitioner is incarcerated and is a prisoner, and as such, said Respondent Warden Winn is the proper party to this 28 USC §2241 habeas corpus action.

## JURISDICTION AND VENUE

3.  That this Court has statute, subject and subject matter jurisdiction pursuant to 28 USC §2241 and that venue is appropriate in that the satellite Camp at the Federal Medical Center, Devens is located within the geographical boundaries of the United States District Court for the District of Massachusetts.

## FACTS

4.  On July 18, 2001, the Grand Jury sitting in the District of Massachusetts indicted the Petitioner. The 18 Count Indictment alleged 16 Counts of Mail Fraud in violation of 18 USC §1341 and 2 Counts of Wire Fraud in violation of 18 USC §1343.

5.  After a Jury Trial on April 4, 2002, the Petitioner was found guilty as to Counts 1-14 and Counts 16-18, and was found not guilty as to Count 15.

6.  On September 25, 2002, the Hon. Nancy Gertner, United States District Judge for the District of Massachusetts sentenced the Petitioner to 30 months imprisonment, and a three year term of supervised release.

7.  On October 1, 2002 a Judgment of Conviction was entered from which the Petitioner filed a timely Notice of Appeal on October 4, 2002.

8.  The Petitioner was authorized to self-surrender to the BOP official at Federal medical Center, Camp Devens on January 6, 2003.

9.  On February 19, 2004 the First Circuit Court of Appeals affirmed the Petitioner's conviction and sentence.

10. Subsequent to his Petitioner's self-surrender, the Respondent Winn caused to be issued to the Petitioner an Admissions and Orientation

Inmate Handbook (Revised: January 1, 2002) ("A&O Handbook"), which contained on Page 25 the following language:

> "RELEASE.... **Community Corrections Center ('Halfway House'):**
>
> The purpose of a Community Corrections Center (CCC) is to provide inmates a positive transition from the institution to a community based correctional setting and to final release. The length of stay in a center is determined by individual needs, availability of service in conjunction with institutional adjustment and instant offense behavior. <u>Placement in a CCC facility will generally range between thirty (30) and one hundred and eighty (180) days.</u> The exact range of placement is determined on a case by case basis...." (Emphasis added).

11. Thereafter, the Respondent WINN caused to be issued to the Petitioner another copy of the "A&O Handbook" which contained on pages 25-26 the following language:

> "RELEASE....COMMUNITY CORRECTIONS CENTER (CCC) TRANSFER.
>
> The purpose of a CCC is to place the inmate in a correctional type facility near their [sic] release designation and to give them [sic] a transition period between incarceration and complete release. The length of stay in a center is determined by individual needs, availability of service and your [sic] release plans. <u>Residence in a CCC will generally range between thirty (30) and one hundred and eighty (180) days.</u> The exact range of placement is determined on a case by case basis." (Emphasis added).

12. Upon information and belief the A&O Handbooks (one or the other or both) containing the **"Release"** statements quoted above are being issued to the inmates at FMC Devens at least as of the date of the filing of this Complaint, but certainly at the time of Petitioner's self-surrender.

13. On January 6, 2003, and upon information and belief, continuously until at least the date of the filing of this Complaint, the BOP had in effect **Program Statement No. 7310.** PS 7310 states the following in Section 5:

> "<u>STATUTORY AUTHORITY</u>. 18 USC §3624(c) provides:
>
> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months of the last ten per centum

of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. The authority provide by this subsection may be used to place a prisoner in home confinement. The United States Probation Office shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 USC §3621 (b) provides:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility...the Bureau determines to be appropriate and suitable. A CCC meets the definition of a 'penal or correctional facility.'

<u>Therefore, the Bureau is not restricted by §3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate.</u> (Emphasis added).

Section 3624(c) however does restrict the Bureau in placing inmates on home confinement to the last six months or (10%) of the sentence, whichever is less."

14. Upon information and belief, the FMC Devens Camp of which the Respondent WINN is the Warden, had consistently since its establishment as a Federal Penal Facility in 1998 had a policy of recommending "most inmates for a six month CCC Placement" as acknowledged and recited by Nancy Patterson, Unit Manager of FMC Devens Camp in her Declaration of September 13, 2003 in the case entitled Goldings v. Winn, District of Massachusetts Docket No. 03-40161-WGY and Goldings v. Winn, First Circuit Court of Appeals Docket No. 03-2633.

15. On December 13, 2002, a Deputy Attorney General within the Department of Justice composed and circulated an eight page memorandum (Legal Opinion) in which he characterized as "unlawful" under **any** circumstances, the long-established BOP policy and practice of transferring inmates to a CCC for periods in excess of the last ten percent (10%) of their term of imprisonment.

-4-

16. On December 16, 2002, the Deputy Attorney General sent a "Memorandum to the Director of the BOP, in which he referred inter alia to the December 13, 2002 Opinion and stated that the authority of the BOP to transfer an inmate to a CCC is limited to the authority in 18 USC § 3624(c) to transfer for the **lesser** of six (6) months or ten percent (10%) of the term to be served. No reference was made to the BOP's authority under 18 USC §3621(b).

17. That both the Opinion of December 13, 2002 and the Memorandum presented subsequently on December 20, 2002 acknowledged the issue that it was changing the long-standing policy and practice of the BOP (especially at Camp Devens) of transferring inmates to a CCC for periods of time in excess of the 10% of their term to be served.

18. The Petitioner avers that a CCC is a penal or correctional facility within the meaning of 18 USC §3621(b).

19. That as of the date of the filing of the instant Petition the Petitioner would be eligible and entitled to six months half-way house which would authorize his release to a CCC on or about September 9, 2004.

20. That on January 27, 2004 the Petitioner was informed that he would be released to a CCC on or about December 21, 2004.

21. That as a result of the prior policy and practice of transferring inmates to a CCC for six (6) months placement the Petitioner has obtained employment with a Company in Newport, Rhode Island which could commence immediately upon his transfer to a half-way house.

22. On or about February 15, 2004, the Plaintiff filed a BP 8 1/2 as part of the Request for Administrative Remedy process with the staff at Camp Devens.

23. The Petitioner has not yet received a timely response to the Administrative Remedy Request recited above.

24. The Petitioner intends to pursue and complete the Administrative Remedy process, but contends that such a process is futile. See **Kennedy v. Winn,** Civ. No. 03-10568-MEL (D. Mass. July 9, 2003).

25. The Petitioner has been recommended for home confinement upon his transfer to the half-way house.

26. The Petitioner is being deprived of his rights and eligibility for at least six (6) months half-way house based upon an "Opinion" of the DOJ and a directive of the BOP which violates Petitioner's Constitutional Rights as hereinafter stated.

### PRELIMINARY STATEMENT OF THE APPLICABILITY OF HABEAS RELIEF PURSUANT TO 28 USC § 2241 TO THE INSTANT CASE AT BAR

27. A prisoner may seek federal habeas relief under 28 USC § 2241 if he is in custody in violation of the Constitution of the United States or federal statutory authority. **Smith v. Phillips,** 455 US 209 (1982).

28. The purpose of the writ of habeas corpus, "the writ" is to challenge the legal authority under which a prisoner is held in custody. **Heck v. Humphrey,** 512 US 477 (1994).

29. A prisoner who seeks "a quantum change in the level of custody, whether outright freedom or freedom subject to limited reporting and financial constraints or bond, parole, probation or some form of special confinement, then relief under "the writ" is his remedy. **Nwanze v. Hahn,** 97 F. Supp. 2d 665, 669 (W.D.Pa. 2000).

## CAUSES OF ACTION

30. The BOP has violated the <u>ex post facto</u> provision of the U.S. Constitution by retroactively applying the Memorandum Opinion as alleged above. See U.S. Const., Art. I §10, cl. 1.

31. That the BOP has erroneously determined that a CCC is not a "penal" correctional facility within the meaning of 18 USC § 3621(b) so as to constitute an appropriate and suitable place to where an inmate may be transferred without the time restrictions as set forth in 18 USC §3624(c).

32. The Petitioner asserts that the BOP's new interpretation of the relevant statutes which are applicable is contrary to a plain reading of the statutes, is inconsistent with the prior interpretations of those statutes propounded by both the DOJ and the BOP, and is not supported by the legislative history surrounding the enactment of those statutes. See **United States v. Iacaboni,** 251 F. Supp. 2d. 1015 (D. Mass. 2003); **Monahan v. Winn,** 276 F. Supp. 2d 196 (D. Mass. 2003); **Zucker v. Menifee,** No. 03-Civ. 10077 (RJH) (S.D.N.Y. January 21, 2004).

33. The manner in which the BOP's new rule regrading transfer to the half-way house violated the provisions of Administrative Procedure Act. 5 USC §§ 551, et. seq.

34. The actions of the DOJ and their agents and those of the BOP and their agents, in implementing the change of policy immediately violated and deprived the Petitioner of his liberty interests in violation of the due process clause of the U.S. Constitution.

35. The Petitioner and his family will suffer irreparable injury unless the Court acts within its equitable powers and issues injunctive relief and authorizes a transfer to a CCC for a period of six (6) months.

36. The failure of the BOP and the DOJ and their respective departments in failing to recognize the retroactive application of the new policy change and designating such policy change as only "procedural" when in fact it was "substantive" and failed to implement procedures that would protect the Petitioner from violations of his Constitutional rights which has deprived the Petitioner of his liberty interests and property without due process of law.

### THE NEW RULE REGARDING CCC CONFINEMENT VIOLATES THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION

37. The new rule applied to half-way houses is being accomplished retroactively and as applied to the Petitioner is violative of Article I §10, cl. 1 of the Constitution. **United States v. Addonizio,** 442 US 178, 187 (1979).

38. The controlling authority with respect to the application of the ex post facto clause regarding prison conditions is **Lynce v. Mathis,** 519 US 433 (1997). In **Lynce,** the Supreme Court rejected the argument that retroactive application of the cancellation of "early release credits" did not violate the ex post facto provision because they were not guaranteed.

39. The removal of the eligibility for 6 month half-way house constitutes an increase in punishment because it impacts upon the ultimate decision by an inmate regarding pleas and trials as well as affecting the ultimate decision by the court in calculating the sentence which is imposed. See **Weaver v. Garner,** 450 US 24, 32 (1981).

40. There are a number of cases which have already addressed the issue of the application of the rule and its retroactive effect on inmates

such as the Petitioner. The majority of such cases have been favorable to the position being presented in the instant case. See **Ashkenazi v. Attorney Gen.** 246 F. Supp. 2d 1 (D.D.C. 2003); **United States v. Iacaboni,** 251 F. Supp. 2d 1015 (D.Mass.); **Culter v. United States,** Civ. No. 03-0106 (ESH), 2003 WL 184022 (D.D.C. Jan. 24, 2003).

41. The application of the new rule to Petitioner's present circumstance is equivalent to new legislation which would be prohibited under the ex post facto clause. See **Ashkenazi,** 246 F. Supp. 2d at p. 5 fn. 9.

42. This Court has the authority pursuant to 28 USC §2241 to set aside the application of the new BOP rule as applied to the Petitioner and grant habeas relief.

### THE NEW BOP RULE IS CONTRARY TO THE RATIONALE EXPRESSED IN RENO V. KORAY AND THE BOP'S PROGRAM STATEMENTS

43. The BOP's attempt to base its legal position on the premise that CCC confinement is **not** penalogical and therefore constitutes grounds for limiting such confinement to ten percent (10%) of a convicted Defendant's sentence is contrary to the rationale and teachings enunciated in **Reno v. Koray,** 515 US 50 (1995).

44. The Petitioner relies upon the application of **Reno v. Koray** which is most adequately and persuasively outlined in the opinion of the Hon. Michael A. Ponsor in **Iacaboni,** supra., and most recently expressed in the opinion of the Hon. Richard J. Holowell in **Zucker v. Menifee,** supra.

45. The BOP had a Program Statement No. 7310.04 in effect at the time of Petitioner's incarceration at Camp Devens.

45. This Program Statement clearly articulated that the BOP was **not** restricted by 18 USC §3624(c) in placing an inmate at a CCC for a period in excess of the last ten percent (10%) of his/her custodial term, and **more than six (6) months if appropriate.**

46. As recited in paragraph 14 above, the Petitioner had the right to rely upon the prior practice that had been established at Camp Devens and is entitled to the application of the holding and teachings expressed in **Reno v. Koray** with respect to his sentence and CCC confinement.

47. The interpretation by the BOP of the statutes applicable to half-way house placement is erroneous and contrary to case authority and therefore violates the rights of the Petitioner.

### THE BOP'S METHOD OF ADOPTING THE NEW RULE REGARDING CCC CONFINEMENT VIOLATED THE PROVISIONS OF THE APA

48. The U.S. Supreme Court has held that the rule making provisions of the Administrative Procedures Act ("APA") do apply when an agency adopts a "new position inconsistent with any of the [agency's] existing regulations." **Shalala v. Guernsey Mem'l Hosp.** 514 US 87, 100 (1995).

49. The Petitioner asserts that the new rule and policy adopted by the BOP is "legislative" because it is binding on many inmates similarly situated and therefore required appropriate notice and comment under the APA rule making requirements. See **Iacaboni**, 251 F. Supp. 2d 1039-40 and **Monahan v. Winn**, 276 F. Supp. 2d at p. 212-216.

50. The BOP's new rule regarding limiting CCC confinement is invalid because the requirements under APA 5 USC §§ 551 et. seq. were not followed. See **Iacaboni**, 251 F. Supp. 2d at p. 1040-45.

51. The BOP's new rule was not "interpretive" and was subject to the requirements under the APA. **Lincoln v. Vigil**, 508 US 182, 196 (1993).

52. The failure to follow the requirements under 5 USC §§ 551 et. seq. violated the rights of the Petitioner.

### THE ACTION OF THE BOP AND THE DOJ IN THE IMPLEMENTATION OF THE NEW RULE VIOLATED THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

53. There is a salutary doctrine that a Federal Court will ordinarily not inject itself into the operations of a prison, or scrutinize decisions made by prison supervisors. This doctrine gives way, however, when the constitutional rights of prisoners are either threatened or invaded. **Procunier v. Martinez,** 410 US 390, 404-06 (1974).

54. It has long been established that lawful imprisonment limits the rights and privileges of prisoners. **Price v. Johnston,** 334 US 266, 285 (1948).

55. However, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime." **Wolff v. McDonnell,** 418 US 539, 555 (1974). There is "no iron curtain drawn between the Constitution and the prisoners of this country." **Wolff,** 418 US at p. 556.

56. Neither the Supreme Court, nor a majority of the Circuit Courts of Appeal have addressed the issue of whether CCC confinement is entitled to Constitutional protection. The Constitution does not mention the concept of halfway house confinement. The right, if it exists originates under statutes or policies codified by the legislature, or in the circumstance as in the instant case, the BOP Program Statements and their implementing regulations.

57. The Supreme Court has held that a Governmental Agency is bound by the terms of its own regulations. **Service v. Dulles,** 354 US 363 (1957); **Vitarelli v. Seaton,** 359 US 535 (1959).

58. Even if the Constitution is not the source of a prisoners potential liberty interests in various aspects of his confinement, the Supreme Court has been willing to extend the 14th Amendment due process clause when the [Government, State or BOP] itself creates a liberty interest in the form of a specific entitlement or guarantee. See **Wolff,** 418 US at p. 557.

59. In **Wolff**, the Supreme Court in dealing with good time credits stated that a "prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances required by the Due Process clause to insure that the state created right is not **arbitrarily abrogated**." Wolff, 418 US at p. 557-58.

60. The expectancy of a CCC placement and period of confinement as expressed and provided for in the BOP Program Statement and Regulations may be entitled to some measure of constitutional protection. **Nebraska Penal Correctional Complex v. Greenholtz**, 412 US 1, 12 (1979).

61. The BOP is not required under the Constitution to provide any measure or amount of half-way house time, but having done so in its policy statements and regulations, it is obligated to afford inmates due process when it revokes the measure or amount of CCC confinement so provided. See **Dewitt v. Ventetoulo**, 6 F3d 32, 36 (1st Cir. 1993); citing **Morrisey v. Brewer**, 408 US 471, 480 (1972).

62. The actions of the Respondent WINN prior to the Petitioner's arrival at Camp Devens in January 2003 with respect to granting six (6) months half-way house to a most of the inmates "created an enforceable expectation," **Hewitt v. Helms**, 459 US 460 (1983) to the extent that such an expectation should be construed as a liberty interest subject to due process. **Meachum v. Fanno**, 427 US 215 (1976).

63. Further, that such an expectation with the attendant due process rights which are premised on regulations, policies, understandings, contractual arrangements or institutional practices deserve the legitimate expectation of a liberty interest entitled to protection. See **Perry v. Sinderman**, 408 US 593,

601-03 (1972); **Morrisey,** 408 US at p. 480.

64. The advice given by the BOP staff at Camp Devens to the Petitioner as to his release date and the limitation of the period of time at the half-way house deprives the Petitioner of his those rights to which he would be entitled. Both equitable estoppel and due process would apply and is the basis upon which the Petitioner asserts he is entitled to six (6) month CCC placement. See **Johnson v. Williford,** 682 F2d 868, 872-73 (9th Cir. 1982).

65. Based upon the facts presented and the case precedent recited above, this Court has the authority under the dictates of the due process clause to grant the relief requested.

### APPLICATION OF 28 USC §2243 IN THE INSTANT CASE

66. The Petitioner respectfully requests that this Honorable Court take judicial notice of the provisions governing the issuance of the Writ of Habeas Corpus under 28 USC §2243, ie., with respect to the return, hearing and decision provisions of 28 USC §2243 which provides as follows:

> "A court, justice or judge entertaining an application for Writ of Habeas corpus **shall forthwith** award the writ or issue an Order directing the Respondent to show cause why the Writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.
>
> The Writ, or Order to show cause **shall** be directed to the person having custody of the person detained. It **shall** be returned within **three days** unless for good cause additional time, **not exceeding twenty days** is allowed.
>
> The person to whom the Writ or Order is directed, **shall** make a return certifying the true cause of the detention. When the Writ or Order is returned, a day **shall** be set for hearing, **not more than five days** after the return less for good cause shown additional time is allowed."

67. The U.S. Supreme Court has stated time and time again, that prompt resolution of prisoner's claims, is a <u>principal function</u> of habeas. <u>Rose v. Lundy,</u> 455 US 520 (1981); <u>Braden v. 30th Judicial Circuit Court of Kentucky,</u> 410 US 484 (1973).

68. Habeas proceedings must not be allowed to "founder in a procedural morass." <u>Price v. Johnston,</u> 334 US 266, 269 (1984).

68. Based upon the above recited authority, the Petitioner requests that in the event this Honorable Court is unable to comply with the dictates of 28 USC §2243 and summarily hear and determine the facts and dispose of the Petition for the issuance of a Writ of Habeas Corpus **as law and justice require,** then this Court is asked to utilize its equitable powers and grant some form of injunctive relief.

### SERVICE OF PROCESS

69. The Petitioner respectfully requests that this Honorable Court allow him to utilize a third party to serve the Petition upon the Respondent Warden DAVID L. WINN, the U.S. Attorney for the District of Massachusetts, MICHAEL SULLIVAN, and upon JOHN ASHCROFT, the Attorney General of the United States by Certified Mail Return Receipt Requested as authorized by FRCP 4.

70. The use of the U.S. Marshal's Service to effectuate process will unduly delay the process, and will be more costly to the Petitioner.

71. The Certified Mailings that are authorized under FRCP 4 can be accomplished by a qualified agent of the Petitioner and service of process can be verified by the submission of a Proof of Service with copies of the appropriately executed green cards.

72. That no prejudice will result if this procedure is permitted.

73. This request to permit a qualified third party to effectuate service is being made to insure prompt resolution of the above filed Petition for Writ of Habeas Corpus.

### NOTICE OF PRIOR AND RELATED ACTION FOR PURPOSES OF DESIGNATING AN ASSIGNED JUDGE IN THE INSTANT CIVIL ACTION

74. Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts, a party litigant is required to identify any and all prior or related actions.

75. The Petitioner identifies the case of the United States of America v. David G. Stern, Criminal File # 01-10026-NG as the prior or related action which was assigned to the Honorable Nancy Gertner, USDJ. The Petitioner requests that the instant action be assigned to Judge Gertner as she is familiar with the facts of the underlying proceedings and can best resolve the instant dispute.

### RELIEF REQUESTED

**WHEREFORE,** The Petitioner respectfully prays for the relief sought in the instant Petition brought pursuant to 28 USC §2241 & §2243, to wit: the granting of a Writ of Habeas Corpus directing the Respondent Warden, DAVID L. WINN to designate the Petitioner to the appropriate CCC no later than on September 9, 2004, or as soon as practical thereafter, and that the following further relief be granted:

A. Ordering an immediate hearing on the instant request for a Writ of Habeas Corpus under the authority recited in 28 USC § 2241 & § 2243;

B. That Service of Process be allowed to be accomplished pursuant to the dictates of FRCP 4;

C. That Assignment of the instant action be authorized to be assigned to the Honorable Nancy Gertner, USDJ;

D. The Court issue whatever appropriate injunctive relief as law and justice may require; and

E. Any other further relief that the Court may determine to be necessary and proper and which justice may require under the facts and circumstances of the instant case.

DATED: March 1, 2004

RESPECTFULLY SUBMITTED,

_____
DAVID G. STERN
23799-038 UNIT I (CAMP)
FEDERAL MEDICAL CENTER, DEVENS
P.O. BOX 879
AYER, MA. 01432

**VERIFICATION**

I, DAVID G. STERN, Petitioner in the above entitled action do hereby certify that all of the facts and circumstances as stated by me in the instant Petition are based upon information and belief, and are true and correct to the best of my knowledge.

DATED: MARCH 1, 2004

RESPECTFULLY SUBMITTED,

_____
DAVID G. STERN
23799-038 UNIT I (CAMP)
FEDERAL MEDICAL CENTER, DEVENS
P.O. BOX 879
AYER, MA. 01432