EXHIBIT A

Case 1:04-cv-10465-NG    Document 6-2    Filed 05/24/2004    Page 1 of 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK D. KENNEDY,                )
                                )
        Petitioner,              )
                                )
v.                              )           03-CV-10568-MEL
                                )
                                )
DAVID L. WINN,                  )
                                )
        Respondent.             )           O R D E R

LASKER, D.J.

      Mark D. Kennedy has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 contending that he should have been released from imprisonment at Fort Devens to a Community Corrections Center (CCC or halfway house) on March 27, 2003.

      Kennedy was sentenced on January 23, 2002 to a term of twenty-one (21) months' imprisonment, which he commenced at Fort Devens on April 1, 2002. He alleges that on or about November 18, 2002 he was informed by his Unit Manager at Fort Devens that he was to be released to a halfway house on March 27, 2003. On November 25, 2002, he signed what he describes as an "agreement" with the Coolidge House Comprehension Sanction Center in Boston, which specified March 27, 2003 as his acceptance date at that facility.

Kennedy alleges that on December 20, 2002 the Bureau of Prisons (BOP) informed Warden Winn of what Kennedy says the BOP called a "procedural change" relative to "pre-release programming CCC designations." The change limited time served in a CCC to 10% of the term to be served, not to exceed six (6) months. As a result of the alleged change, Kennedy states that on December 24, 2002 he was informed that his date of transfer to Coolidge House would be July 30, 2003 rather than March 27, 2003.

Kennedy alleges that it was a violation of his rights to apply, what he alleges to have been a new policy, retroactively to modify his sentence.

Kennedy relies on the decisions in this Court by Judge Ponsor in Frank Iacaboni v. U.S., 251 F. Supp. 2nd 1015 and Monahan v. Winn, 03-CV-40075-NG, by Judge Gertner, which vacated a change of a BOP policy on the grounds that (1) the change in those cases was based on an erroneous interpretation of the controlling statute, (2) the change failed to meet the requirements of the Administrative Procedure Act (APA), and (3) the change could not legally be applied retroactively.

The government has moved to dismiss Kennedy's petition on the grounds that Kennedy has failed to exhaust his remedies. Dismissal on that ground is denied. If there ever was a case in which the exhaustion of remedies would be futile, it is this: A

-2-

look at the calendar makes it obvious that such administrative remedies as are available can not reasonably be expected to be completed much before the 30th of July, the date on which even the BOP agrees that Kennedy will be transferred to Coolidge House. Moreover, although the government is correct that under 42 U.S.C. § 1997(e)(a) of the Prisoner Litigation Reform Act a prisoner must exhaust remedies before filing suit as to prison conditions, see Porter v. Nussle, 534 U.S. 516 (2002) and Booth v. Churner, 532 U.S. 731 (2001), this case is not a suit about prison conditions.

However, even if Kennedy is entitled to proceed with the present petition without exhausting administrative remedies, the petition must, nevertheless, be denied.

It is understandable that Kennedy regards the Iacaboni and Maloney cases as authorities which reasonably dictate that he should be immediately released to Coolidge House. However, as argument by government counsel and Mr. Kennedy, *pro se*, held yesterday established that the controlling statute in the present case is 18 U.S.C. § 3624(c), whereas the controlling statutes dealt with in the Iacaboni and Maloney cases were 18 U.S.C. §§ 3621(b) and 3625. Accordingly, the Iacaboni and Maloney opinions, as impressive as they are, do not help in ruling on Kennedy's petition.

The controlling statute in Kennedy's case, 18 U.S.C. § 3624(c), provides in relevant part:

> (C) Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

According to Kennedy's petition, he was originally informed that his date of release to the Coolidge House would be March 27, 2003. This was a date six (6) months prior to his release date of September 2003, and presumably was set as Kennedy's halfway house date because it <u>was</u> six (6) months prior to his release date. It is apparent from the language of the statute, however, that to set the halfway house date six (6) months ahead of the release date in Kennedy's case was a mistake because it exceeded the 10% maximum period of halfway house residence permitted under the statute, the language of which specifies that such halfway house residents should be in an amount "not to exceed 6 months, <u>of the last 10 per centum of the term to be served</u>." (18 U.S.C. § 3624(c)). (Emphasis added).

On the basis of the analysis above, I conclude that the revision of Kennedy's halfway house sentence was an appropriate

-4-

correction of a mistake originally made in applying the controlling language of section 3624(c).

It is, of course, regrettable that a prisoner was lead to believe that he would be released from full imprisonment on a certain date only to be told later that that imprisonment would be continued for four (4) months. It is understandable that under the circumstances the prisoner was aggrieved and believed that his rights had been violated.

Nevertheless, for the reasons stated above, the petition must be dismissed.

It is so ordered.


Dated:   July 9, 2003
         Boston, Massachusetts            /s/  MORRIS E. LASKER
                                               U.S.D.J.

-5-