UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID G. STERN,

    Petitioner

  vs.

DAVID L. WINN, Warden
Federal Medical Center,
Devens.

    Respondent.

_____/

FILED
IN CLERKS OFFICE

2004 JUN -7 P 1: 52

U.S. DISTRICT COURT
CIVIL ACTION NO. 04-10465-NG
DISTRICT OF MASS

HON. NANCY GERTNER, USDJ
MAGISTRATE JUDGE DEIN

### PETITIONER'S MEMORANDUM IN SUPPORT OF ANSWER
### TO RESPONDENT'S MOTION TO DISMISS

NOW COMES the above named Petitioner, **DAVID G. STERN**, Pro Se and hereby files this Memorandum in Support of his Answer to Respondent's Motion to Dismiss and in support states as follows:

### PRELIMINARY STATEMENT

On March 8, 2004, the Petitioner, DAVID G. STERN, ("STERN") filed a Petition for Writ of Habeas Corpus pursuant to 28 USC § 2241 and §2243. In that Petition Stern sought relief in seeking to have the Bureau of Prisons (BOP) thru the Respondent Warden designate him to an applicable Community Corrections Center,(CCC) half-way house for a period of time which he asserted he was entitled to as a result of a long standing policy that had been implemented by the officials at Camp Devens and which was in effect when he was sentenced in his underlying criminal case.

On May 24, 2004, the Respondent filed his Motion to Dismiss pursuant to Fed.R.Civ. P. 12(b)(6), asserting that the Petition should be dismissed because it failed to state a claim upon which relief could be granted.  The Petitioner submits this Memorandum in Support of his Answer to the Respondent's Motion to Dismiss.

-1-

## FACTS

The facts relating to the instant case are generally not in dispute. However, the Respondent's Motion to Dismiss and the Memorandum in Support do not challenge those allegations made in the Petition for Writ of Habeas Corpus which substantiate the Petitioner's position as to his entitlement of CCC Placement based upon the written handbooks presented and the policy relied upon by the Warden at Camp Devens.  The allegations in paragraphs 10 thru 14 have not been controverted by any Declaration or statement by the Respondent or other official at Camp Devens.

The Petitioner disputes portions of the Declaration of Patrick W. Ward which was submitted in support of the Motion to Dismiss.[1]  Specifically, the statements in that Declaration which relate to the Administrative Remedy Process are an effort to distort and obfuscate the legal grounds upon which the Petitioner rests his claims.

The arguments presented in the Memorandum in Support of the Motion to Dismiss which rely upon the fact that Stern was consistently advised that CCC placement would be reviewed within 11-13 months of his release date does not form a factual premise that Stern did not rely upon prior policy or practice that CCC placement would be for a period of six months.  In fact, it was not until January 27, 2004, that Stern learned for the first time that he would not receive six months half-way house that he immediately began the Administrative Remedy Process.

_____

[1]    Petitioner has filed prior to the submission of this Memorandum in Support of his Answer to Respondent's Motion to Dismiss a Motion to Strike a portion of the Declaration of Patrick W. Ward as it pertains to any suggestion that he has not pursued any administrative remedies.  As the facts will clearly show Stern has in fact filed a BP-8 1/2 and a BP-9.  If any thing is accurate it is the fact that the Respondent is playing fast and loose with the truth in an effort to obtain a dismissal of the Petition for Writ of Habeas Corpus.

Furthermore, in as much as being eligible for CCC release is in part determined by an inmate's "conduct" while incarcerated, Stern has "outstanding work evaluations," (Exhibit I attached to Ward Declaration) "maintained clear conduct" (Exhibit I attached to Ward Declaration), "completed financial responsibility" (Exhibit G attached to Ward Declaration), and works as a "town driver" outside the Camp facility (Exhibit G attached to Ward Declaration).

Moreover, the effort at attempting to distort the facts and legal authority upon which Stern has fashioned his request for relief is undermined when examined in light of the standard in deciding Motions to Dismiss brought pursuant to FRCP 12(b)(6).

Finally, the factual premise that the events surrounding the DAG opinion of December 13, 2002 are to be considered without application to the facts as alleged by Stern in his Petition is not only self-serving, but is faulty on legal grounds which he has asserted and upon which relief is sought. The legal authority presented and the facts alleged are sufficient to support the grounds upon which relief is to be granted and therefore preclude the granting of the Motion to Dismiss pursuant to FRCP 12(b)(6).

## LEGAL ARGUMENT

### STANDARD FOR DECIDING RULE 12(b)(6) MOTIONS.

The standard for deciding Motions to Dismiss pursuant to FRCP 12(b)(6) is well settled. A Complaint should not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. **Conley v. Gibson, 355 US 41, 45-46 (1957).**

-3-

In deciding a Motion to Dismiss, all factual allegations and all reasonable inferences that can be drawn must be accepted as true and viewed in the light most favorable to the non-moving party. **Leatherman v. Tarrant County Narcotics Unit**, 507 US 163 (1993). Dismissal is proper under FRCP 12(b)(6) if, as a matter of law, it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations averred in the Complaint. **Hishon v. King & Spaulding**, 469 US 69, 73 (1984).

The Complaint must be read in the light most favorable to the Plaintiff, and all well-pleaded material allegations in the Complaint must be taken as true. **Estelle v. Gamble**, 429 US 97 (1976). See also, **Kiely v. Raytheon Co.**, 105 f3d 734, 735 (1st Cir. 1997); cited in **Gorski v. New Hampshire Dept of Corrections**, 290 F3d 466, 473 (1st cir. 2002).[2]

With the above noted standard in place, the Petitioner's claims for relief pursuant to 28 USC §2241 and §2243 must be acknowledged to be premised upon factual and legal allegations which form the basis for a valid cause of action upon which relief can be granted. Furthermore, as will be evidenced in the legal summary that follows the Respondent has not traversed many of the factual allegations in the original Petition thereby precluding this Court from granting the Motion to Dismiss. The Petitioner will respond to the legal arguments presented by the Respondent, **seriatim.**

_____/

[2]    Even if the facts were to be considered not in dispute, which the Petitioner asserts is not true, the Motion under FRCP 12(b)(6) should be denied based on the deferential standard accorded to the non-moving party in connection with such Motions, especially where the Petitioner has not inserted "invective...bald assertions, unsupportable conclusions, periphrastic circumstances, and the like,..." in his Complaint. See **Aulson v. Blanchard**, 83 F3d 1, 3 (1st. Cir. 1996).

I.      **PETITIONER HAS STATED A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

A.      **The New BOP Policy Is An Incorrect Application of the Law.**

The Respondent's position is based primarily upon a review of the
legislative history of 18 USC § 3624(c).  In addition, the DAG opinion of
December 13, 2002, concludes that 18 USC § 3621(b) does not permit the BOP
to make an initial designation to a community corrections center (CCC) **in
any case,** and the CCC's may be used only for "pre-release custody" during the
last 10% of any prison sentence, pursuant to §3624(c).

The BOP prior to December 2002, had long construed §3621(b), like its
pre-Sentencing Reform Act predecessor, former statutory provision 18 USC §4082(b),
to authorize the designation of a community corrections center (formerly known
as community treatment centers) as the "penal correctional facility" for service
of a federal sentence.  BOP Prog. Smt.  7310.04 (12/16/98) (current version);
and prior versions, including Prog. Smt. 7310.01 (4/30/93).  As the Program
Statement explains:

> 18 USC §3621(b) provides:
>
>> "The Bureau of Prisons shall designate the place of the prisoner's
>> imprisonment.  The Bureau may designate any available penal or
>> correctional facility...the Bureau determines to be **appropriate**
>> and suitable."
>
> A CCC meets the definition of a "penal or correctional facility."
>
> Therefore, the Bureau is not restricted by §3624(c) in designating
> a CCC for an inmate.

Section 3624(c), adopted as part of the Sentencing Reform Act of 1984
served to insure that all prisoners, "to the extent practicable," would receive
a period of pre-release custody of at least 10% of their sentence (but not to
exceed six months) to facilitate their re-entry into society after a period
of secure imprisonment.

The Respondent's contention that the decisions relied upon by the Petitioner discuss CCC placement at the outset of the sentence as opposed to CCC placement at the **end** of a sentence, is a distinction that does not pass muster upon examination of the legislative and judicial history surrounding the applicable statutory provisions.

The legislative history of the 1990 amendment to §3624(c) which specifically allowed even home confinement to be utilized as a pre-release form of community custody, demonstrated that there was a longstanding authority to designate a CCC was not abrogated by implication when §3624(c) was adopted. This is but one example that §3621(b) was not intended to change pre-existing law with respect to the authority of the BOP **at any stage of the sentence time frame.** See **McCarthy v. Doe, 146 F3d 118, 123 fn. 2 (2d Cir. 1998).** Since that pre-existing law included the authority to designate a CCC for service of a sentence of imprisonment, the BOP's action in reliance on the DAG's legal opinion to curtail such designation is contrary to the Congressional intent as pertains to the statutes denoted above.

In light of the clear history of §3621(b), it is unreasonable to read 18 USC §3624(c)--which declares the policy of Congress that the BOP give prisoners assistance in preparing for their release--as restricting the authority of the BOP to utilize CCC placement for initial, mid-term or pre-release designation in the appropriate cases. The latter statute deals with inmates who were **not** suitable for initial CCC placement, due to the length of their sentence, their personal backgrounds, or the nature of their crimes requiring more secure incarceration.

Those inmates are nevertheless entitled "to the extent practicable," as §3624(c) emphasizes, to assistance in preparing for release during the last 10% of their sentence, which may include community confinement, but in any event not for more than the last six months of the sentence to be served. As the BOP's own Program Statements have consistently recognized, neither this statutory encouragement to the BOP to facilitate the process of pre-release nor its limitations[3] has any bearing on the general designation authority, either at the beginning or at the end of the sentence that is served.

Both before and after 1987 the Court's have correctly interpreted §3621(b) (which was derived from a 1930 enactment) as granting a "broad discretion...in designating a place of imprisonment...." **McCarthy v. Doe, supra., 146 F3d at p. 123.** Accord, **Howe v. Smith, 452 US 473, 482 (1981)** (noting BOP's discretion under former §4082(b)).[4]

The DAG opinion of December 2002 avoids the question which has been raised by Stern in the instant case. In addition, it attempts to examine the issues presented by suggesting that the controlling statute is §3624(c) standing alone. There is no such limitation either by statutory construction or judicial analysis.

---

(3)    Under the correct reading of the awkwardly phrased §3624(c), the six month/ 10% provision limits each prisoner's **entitlement** to pre-release consideration, but it does **not** limit the BOP's authority, in **its** discretion to utilize CCC's at any time, including for longer than six months, and from the **beginning** as well as at the **end** of a sentence. Until December 2002, this was always the BOP's interpretation of its authority under §3624(c). See CCC Utilization and Transfer Procedure, Program Statement 7310.04 (1998) pp. 1-4. Moreover, the policy of CCC placement at Camp Devens is reflected in a policy where most if not all of the inmates received 6 months CCC Placement. In most of the cases which have been filed involving this issue, the BOP has consistently caused delay, obfuscation and avoidance in acknowledging this significant fact.

(4)    This designation has been called "open-ended." See Statutory Authority to Contract With the Private sector for Secure Facilities," 16 Op. OLC 65 (1992).

Nowhere in the Motion to Dismiss does the Respondent address or even **deny** the facts alleged in paragraphs 10 thru 14 of the original Petition which focuses upon the Program Statements and alleged policies and practices in place at Camp Devens which supports the arguments presented by Stern that he is entitled to six months CCC placement.  The reason for this is simple:  First, the allegations are true and must be accepted as true, and Second, there is no denying that a policy existed at Camp Devens prior to December 2002 where the Respondent Warden authorized 6 months CCC placement to inmates housed at the Devens facility.[5]  The Respondent's Memorandum completely ignored this crucial factual dispute upon which the original Petition for Writ of Habeas Corpus was based.

Moreover, the Respondent's reliance upon Kennedy v. Winn, 03-CV-10568-MEL (Lasker, J)(D.Mass. July 9, 2003); Rothberg v. Winn, 03-CV-11308-RGS (Stearns,J.) (D.Mass. Oct. 10, 2003); Goldings v. Winn, 03-CV-40161-WGY (Young, J.)(D.Mass. Oct. 23, 2003), appeal docketed No. 03-2633 (1st Cir. argued May 7, 2004); and Turano v. Winn, 03-CV-40188-EFH (Harrington, J.)(D.Mass. January 7, 2004) all[6] of which are unpublished slip opinions from the District of Massachusetts are all misplaced and should not be relied upon by this Court since they do not constitute binding authority for purposes of disposing of the instant Motion.

/

[5]   It is significant that the respondent did not deny the allegations in paragraphs 10 thru 14 because not only are they true, but specifically in paragraph 14 Stern alleged that the six month placement in a CCC for inmates housed at Camp Devens was acknowledged by Nancy Patterson the Unit Manager in her Declaration of September 13, 2003 in the **Goldings v. Winn**, case. It is beyond preadventure that this fact can no longer be denied or rejected by the Respondent.  Based upon this admission alone the Court must deny the Motion to Dismiss.

[6]   The Respondent also relied upon United States v. Mikutowicz, 2003 WL 21857885 (D.Mass. August 6, 2003)(Zobel, J) as authority for the proposition that the BOP's new interpretation of §3624(c) was correct.  However, upon examining the decision in Mikutowicz it is clear that the Petitioner there sought relief by way of Mandamus and not pursuant to 28 USC §2241, therefore undermining it as authority in support of the BOP's position in the instant case.

-8-

Further, the recitation on page 10 of the Memorandum that the weight of authority in the "end of sentence cases" is with the Government is not only inaccurate, it is a distortion of reality upon examination of that authority. Stern presents the following cases where published or written opinions have decided the issues raised in this Memorandum have been in favor of the inmate. See, **United States v. Iacaboni**, 251 F. Supp 2d. 1015 (D.Mass. 2003); **United States v. Serpa**, 251 F. Supp. 2d. 988 (D. Mass. 2003); **Byrd v. Moore**, 252 F. Supp. 2d. 293 (W.D. N.C. 2003); **Tipton v. Federal Bureau of Prisons**, 262 F. Supp. 2d. 633 (D.Md. 2003); **Howard v. Ashcroft**, 248 F. Supp.2d. 518 (M.D.La. 2003); **Colton v. Ashcroft**, 299 F. Supp. 2d. 681 (E.D. Ky. 2004); **Ziegler v. Ashcroft**, No. WMN-04-719 (D.Md. March 31, 2004)(Nickerson, J.); **Crowley v. Federal Bureau of Prisons**, 2004 WL 516210 (S.D.N.Y. March 4, 2004)(Hellerstein, J.); **DiStefano v. Federal Bureau of Prisons**, 2004 WL 396999 (S.D.N.Y. March 4, 2004)(Sweet, J.); **Serafini v. Dodrill**, No. CV-04-311 (M.D.Pa. Feb. 23, 2004) (Vanaskie, J.); **Bacquie v. Menifee**, 04-CV-688 (S.D.N.Y. Feb. 20, 2004)(Chin,J.); **Zucker v. Menifee**, 2004 WL 102779 (S.D.N.Y. Jan. 21, 2004)(Holowell, J.); **Greenfield v. Menifee**, No. 02-CIV-8205 (KMW)(S.D.N.Y. Oct. 30, 2003)(Wood, J.); **Cioffoleti v. Federal Bureau of Prisons**, No. 03-CV-3220(ILG)(E.D.N.Y. Nov. 6,2003) (Glasser, J.); **Cato v. Menifee**, 03-CIV-5797(DC)(S.D.N.Y. Nov. 20, 2003)(Chin,J.).[7]

To the extent that the Respondent fails to acknowledge the above authority, Stern suggests that it is intellectually dishonest. To the extent that the Respondent glosses over this Court's decision in **Monahan v. Winn**, 276 F. Supp. 2d

---

[7]  There may be a number of additional cases which support the position taken by Petitioner. However, due to the limited resources at the Camp Devens Law Library the above noted cases clearly suggest that the weight of authority is contrary to the Government's position.  See, **Panchernikov v. Federal Bureau of Prisons**, 2004 US Dist LEXIS 6991 (S.D.N.Y. April 23, 2004)(Berman, J.); **Cohn v. Federal Bureau of Prisons**, 302 F. Supp. 2d 267 (S.D.N.Y. Feb. 10, 2004)(Pauley, J.) as authority contrary to the position of the inmate.

**196 (D. Mass. 2003),** it exposes the internal weakness of the Government's position.  This Court said as follows:

> "The BOP takes the position that the discretion §3621(b) affords the BOP in dtermining "place of imprisonment" does not include the discretion to transfer a prisoner to community confinement facilities-neither pursuant to a judicial recommendation at sentencing, nor at the end of a prisoner's term. Prison, it appears, necessarily means a very specific place-with barbed wire and absolute constraints on liberty-and nothing else. This definition admits of only one exception, which the Government itself cites, contradicting itself: During the final 10 percent of the term, not to exceed six months, under 18 USC §3624(c)(the statute outlining the steps that the BOP is required to take at the end of a prison term to transition the prisoner back into society), prison can mean community confinement, or even home detention.  **276 F. Supp. 2d. at_____ Slip Opinion at pg. 19.**

The Government also attempted to distinguish **Monahan** from the instant case based on the factual predicate which is allegedly different, ie., at the end of sentence and not based upon movement from CCC to prison, no broken promises about the duration of CCC confinement.  The effort at distinguishing the instant case is unavailing.  Even in light of the Government's attempt to treat this case somewhat similarly to Pereira v. Winn, No. 03-40139-NG and ultimately rejecting its application because this Court declined to issue an injunction in Pereira,[8] the rationale is exposed as sheer speculation when the Memorandum states: "Just like the Court **may have** ultimately found with respect to Pereira, Stern has never been told anything other than that he will be sent to a CCC for the last 10 percent of his sentence."

---

(8)    The record in Pereira will show that counsel for Petitioner sought discovery relating to the past practices and policies at Camp Devens.  The Respondent employed a delaying tactic whereby the case became moot and then Pereira departed to the half-way house prior to the Court disposing the case on the merits.  It should be abundantly clear to this Court that the Respondent if required to conduct fair and meaningful discovery it would be clearly established that such a policy existed at Camp Devens for a period of several years prior to Stern's self-surrender and that he was entitled to rely upon such an expectation in light of the Program Statements and the interpretation of the applicable statutes dealing with CCC placement.

Finally, the Government relies upon **United States v. Cintron–Hernandez**, **356 F3d 340 (1st Cir. 2004)** to support their argument that 'imprisonment" does not include placement in a CCC.  While it is true that Cintron–Hernandez stands for the proposition that 'imprisonment' and 'community confinement' are not synonyms **356 F3d at p. 348** there is no relevance or application of that decision to the facts of the instant case.  In **Cintron–Hernandez**, the district judge had **substituted** home confinement for the minimum custodial portion of the Defendant's 10 month sentence under the Guidelines.  Essentially, the defendant did not receive **any** prison time which was mandated by the Guidelines.

Even though §3621(b) was interjected into the opinion, the First Circuit suggested that it only became relevant for discussion relative to the BOP's authority to choose a "penal or correctional facility and determine that such facility [met] enumerated minimum standards." **356 F3d at p. 346.**  Stern is not seeking to reduce his custodial term by reducing the minimum period of incarceration under the Guidelines.  He is trying to achieve the maximum CCC placement and has alleged a policy and practice which he asserts forms the basis for the claims filed in his §2241 Petition.

The conclusion reached by the Government in their Memorandum that the plain language of the statutes, the legislative history of those statutes, and the case law suggesting that §3624(c) is controlling is undermined by the case authority which Stern has presented above.

Based upon the claims that have been asserted in the §2241 Petition which have gone unrebutted require that this Court deny the Motion to Dismiss.

-11-

B.     **The BOP's Change in Policy Violates the Administrative Procedures Act.**

The Bureau of Prisons imposed new prohibition as announced in the DAG opinion of December 2002 as to the amount of time for which CCC placement is to be accorded to inmates violated the Administrative Procedures Act for failing to provide public notice that it intended to promulgate such a rule. This new rule was implemented without providing the opportunity for interested persons to participate in such rule making and violated the Administrative Procedures Act ("APA").  That Act requires that the agency provide such prior notice and opportunity to comment on such proposed rule changes.  See 5 USC §553(b)-(d).  See also, **New York State Electric & Gas Corp. v. Saranac Power Partners, L.P.,** 267 F3d 138, 131 (2d Cir. 2001).

When an agency fails to publish a legislative rule as required by the APA, an action based on that new rule may be declared unenforceable in a habeas proceeding.  See **Zhang v. Slattery,** 55 F3d 732, 744-47, 748-49 (2d Cir. 1995). The Bureau of Prisons failure to publish and accept comment on its December 2002 abandonment of its longstanding Program Statements and the policy of 6 months CCC placement for service of a sentence requires some review and action by this Court.  The relief sought by the Petitioner is within the jurisdiction of this Court.

1.     **The APA Applies to rules Promulgated by the BOP.**

"[T]he APA applies to all federal agencies unless explicitly prohibited by statute." **Harris v. Mutual of Omaha Cos.,** 992 F2d 706, 712 (7th Cir. 1993). While 18 USC §3625 does not exempt BOP "determination[s]. decision[s] or order[s]" from 5 USC § 554, 555 and 701-706 of the APA, these limits are in any way implicated here, where the Petitioner has invoked the notice-and-comment protections of §553.  See **Martin v. Gerlinski,** 133 F3d 1076, 1079 (8th Cir. 1998).

-12-

However, §3625 does not preclude application of the APA to BOP rule making.  **Lasora v. Spears,** 2 F. Supp. 2d 550, 565 fn. 5 (S.D.N.Y. 1998). The legislative history of the Sentencing Reform Act speaks directly to this question: "The phrsae 'determination, decision or order' is intended to mean adjudication of specific cases as opposed to promulgation of generally applicable regulations."  S.Rep. 98-225, 98th Cong. 1st Sess. at p. 149 (1983).  Thus, the "APA continues to apply to [the] regulation-making authority of the Bureau of Prisons."  Id 149 fn. 3  citing **Ramer v. Saxbe, 552 F2d 695 (D,C.Cir. 1976)).**

## 2.  The BOP's New Initiative is a "Rule" Under the APA.

The BOP's longstanding interpretation of its designation authority as including CCC placement is published as a Program Statement and not in the Code of Federal Regulations.  SEE BOP Program Statement 7310.04 (12/16/98). The revised interpretation has been presented by the BOP in an informal memorandum opinion.  The BOP's public declaration of whether it will utilize a CCC as the place for the service of a sentence under 18 USC §3621(b) nevertheless constitutes a "rule" under the APA.  The APA defines the term "rule" to encompass the "whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy..." 5 USC § 551(4).  This broad definition covers a blanket restriction by the BOP on the designation to one or another sort of "penal or correctional facility."  18 USC §3621(b), as to all inmates sentenced to imprisonment.  The definition does not require promulgation to be formally designated as a rule or regulation.  See **American Paper Institute v. EPA, 660 F2d 854, 959 fn. 13 (4th Cir. 1991).**  It has encompassed unlikely documents such as memoranda of understanding.  See **Reynolds Metals Co. v. Rumsfeld,**

564 F2d 663, 669 (4th Cir. 1977).  See also, **Mada-Luna v. Fitzpatrick**,
**813 F2d 1006, 1011-12 (9th Cir. 1987)** (INS repeal of former operating
instructions and promulgation of new ones, "independently triggers section
553's notice-and-comment requirements unless it qualified for one of the
exceptions contained in that provision.

>    **3.    The APA Exception for Interpretive Rules, Statements of
>           Policy, and Rules of Agency Procedure Are Not applicable
>           Under the Facts of the Instant Case.**

The Respondent attempts to portray the new BOP policy as "interpretive"
not legislative or substantive.  The APA exempts from its notice and comment
requirement "interpretive rules, general statements of policy, or rules of
agency organization, procedure or practice."  5 USC §553(b)(A).  The new
BOP rule, however, is "substantive" (or "legislative") in nature and there-
fore does not fall within this exception.  See generally, **Sweet v. Sheehan**,
**235 F3d 80,91 (2d Cir. 2000)** (distinguishing legislative from interpretive
rules).

First, the new BOP rule does not qualify as "interpretive."  A rule is
substantive and not interpretive if it "change[s] existing law, policy or
practice."  **Zhang v. Slattery, supra., 55 F3d at p. 745 fn. 8** (source of
quotation and authorities omitted).  See also **Shalala v. Guernsey Memorial
Hospital, 514 US 87, 99-100 (1995),** (exception for interpretive rule would
not apply if agency 'adopted new position for failing to comply with notice
and comment procedure).  **Wiggnis v. Wise, 951 F. Supp. (S.D.W.Va. 1996),** (BOP
rule which changed eligibility for early release program imposed new restrict-
ions was legislative, not interpretive, even though change turned on new "in-
terpretation" of statutory term).

In addition, a rule is substantive and not interpretive if it does more than "simply state what the administrative agency thinks a statute means" and "reminds affected parties of existing duties"--that is, if it actually "implement[s] the statute" and "has the force and effect of law." **Chen Zhou Chai v. Carroll,** 48 F3d 1331, 1340-41 (4th Cir. 1995).

By the BOP's own admission, the new rule announced in the December 2002 opinion makes a change in practice with respect to CCC placement. Compare, **Clarry v. United States,** 85 F3d 1041, 1049 (2d Cir. 1996). Further, the DAG opinion and the policy change adopted by the BOP does more than simply state what a statute means; it actually implements that statute. Moreover, in one case, **Ferguson v. Manco,** No. 03-CV-0338(CBA)(Amon, J.) in true legislative fashion the BOP outlined an exception to the rules to fit the facts--and obtained a dismissal of the Petition for Writ of habeas Corpus without written opinion from the district court.[9]

Second, the BOP rule is not a general statement of policy. "A rule is a general statement of policy if it does not establish a binding norm and leaves agency officials free to exercise their discretion." **Chen Zhou Chai, supra.,** **48 F3d at p. 1341.** See also, **Lincoln V. Vigil,** 508 US 182 (1993)(general statements of policy are "statements issued by the agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power"). The BOP rule involved in the instant case is the exact opposite. It imposes a per se rule prohibiting direct CCC placement and limits the amount of time a prisoner can be placed in the half-way house to 10% of his sentence.

_____

(9)    Subsequent to the submission of an appeal to the Second Circuit Court of Appeals, and prior to oral argument the Petitioner's period of incarceration expired.  As in many cases whether the BOP prevailed or had its position rejected, an appeal was dismissed as moot because the inmate had been released to half-way house.

The new rule leaves the BOP with no room to exercise discretion in individual cases and prohibits the exercise of discretion that was not only formerly afforded, but which in fact was exercised by the Respondent at Camp Devens as alleged by the Petitioner.[10]

For these reasons, a number of jurists have held that the APA required the BOP to provide notice and opportunity to comment before promulgating its new rule. See **Byrd v. Moore, supra., Iacaboni v. United States, supra., Ferguson v. Ashcroft,** 248 F. Supp. 2d 547, 564-65 (M.D.La. 2003); **Ziegler v. Ashcroft,** No. WMN-04-719 (D.Md. March 31, 2004); **Serafini v. Dodrill,** **No. 3:CV-04-311 (M.D.Pa. Feb. 23, 2004).** Many of these cases discussed the APA challenge to the new CCC policy and granted relief on the basis that the failure to abide by the APA dictates required injunctive relief being granted to the inmates. The Courts held that the BOP's disregard of the APA requirements rendered the new rule invalid.

Finally, the authority upon which the Respondent relied in arguing that the rule was "interpretive" rather than "legislative" or "substantive" was misplaced and did in fact avoid discussion of the substantial impact upon the public. Both of the cases relied upon by the Respondent, **Warder v.**

---

(10)    Even if the BOP's statement that the new rule is one of "procedure," it is not a rule of "agency organization, procedure or practice." Such rules concern "the manner in which...parties present themselves or their viewpoints to the agency." **RSM Inc v. Buckles, 254 F3d 61, 68-69 (4th Cir. 2001).** They do not "alter the rights or interests of the parties." **Id.** The BOP rule has nothing to do with how parties present themselves to the agency and most assuredly it in fact altered the rights and interests of inmates at all BOP institutions, and based upon the facts pled in the original Petition, effected the Petitioner in a very significant way.

-16-

**Shalala,** 149 F3d 73 (1st Cir. 1998), and **Chevron USA Inc., v. Natural Resources Defense Council Inc.,** 467 US 837 (1981) have no application to the instant case.

In **Warder,** the First Circuit indicated that for notice and comment to be necessary "the [later] rule would have to be inconsistent with another rule having the force of law, not just any agency interpretation regardless of whether it had been codified." **149 F3d at p. 81** citing **Chief Probation Officers v. Shalala,** 118 F3d 1327, 1337 (9th Cir. 1997). As Stern has argued based upon the support in **Iacaboni** and **Monahan** that there has been a substantive change, the failure to follow the APA requirements invalidates the new rule adopted by the BOP. Reliance upon **Warder** fails for this reason.

The Respondent's recitation to **Chevron** is premised upon the issue of statutory interpretation. If the meaning of a statute is clear the Courts enforce that meaning. **Chevron, 467 US at p. 842-43.** In this case, the statute in question has been interpreted by the DOJ in a rule promulgated **without** notice and comment. That interpretation is governed by the second prong of **Chevron:** "if Congress has not spoken to the question at issue, the Courts may not substitute its own reading of the statute unless the agency's interpretation is unreasonable." **467 US at p. 843-44.**

Stern submits that 18 USC §3621(b) **is** perfectly clear when it states:

> "The Bureau may at any time...direct the transfer of a prisoner from one penal or correctional facility to another."

It is important to note that it is this **transfer** authority from custody to a Community Corrections Center which is at issue in this case and not the question of a court to recommend, and the BOP to designate a convicted defendant to a CCC at the **beginning** of a sentence. Based on the premise that Stern has contended that a CCC **is** a "penal or correctional facility" there is no need to conduct a **Chevron** analysis at all.

-17-

Even if the co-existence of §3621(b) and § 3624(c) were found to lack clarity into the transfer authority of the BOP, the Respondent's reliance upon the **Chevron** test in its first prong does not allow the inquiry to proceed to legislative history or agency deference as suggested, if the **intent** of Congress is clear. The question that needs to be addressed is: Did Congress know what it was doing when it enacted the transfer language into law, ie., that many inmates may find themselves being transferred to facilities other than "razor-wire like prisons" when the professionals at the BOP are applying the "place of imprisonment" standards contained in §3621(b). Stern urges this Court to find that it did. Petitioner has been in a traditional penal or correctional facility and the opportunity for him to make a transition for a significant period such as six months in a CCC before supervised release is completely compatible the standards for such transition adopted by the BOP.

Based upon the above authority and for the reasons noted, the Petitioner asks that this Court determine that the APA has been violated and that the new rule implemented by the BOP is invalid.

**C.    The New BOP Policy Violates the Ex Post Facto Clause.**

The new rule implemented by the BOP is invalid because it violates the Ex Post Facto Clause of the U.S. Constitution. (Art. 1 §9 cl. 3). It has been held that "to fall within the ex post facto prohibition, a law must be retro-spective--that is, 'it must apply to events occurring before its enactment'-- and it 'must disadvantage the offender affected by it.'" **Lynce v. Mathis, 519 US 433, 441 (1997)** citing **Weaver v. Graham, 450 US 24, 29 (1981)**.

As applied to the facts of the instant case, even if the new rule was a valid interpretation of the statutes involved, the BOP would still be required

-18-

to apply it prospectively.  Instead, the BOP chose to apply it retrospectively, electing to deny CCC placement to inmates for any period except the last 10% of their sentence.

In the instant case, it is incorrect for the Respondent to characterize the new rule making no change or not increasing the punishment meeted out to the Petitioner, but only change the conditions of his confinement.  In addition to substantive rules changes, new procedural provisions may violate the ex post facto clause if they "creat[e] a significant risk of prolonging [the defendants] incarceration." **Garner v. Jones, 529 US 244, 251 (2000).**  This is exactly what has occurred in the instant case.

On several occasions the Supreme Court in examining the application of ex post facto considerations found that even a changed rule of evidence which eliminated the need for corroboration of a witness's testimony **Carmell v. Texas, 529 US 513 (2000)** or the detrimental change in the method of calculating "good-time" credits **Weaver, supra., 450 US at p. 32** violated ex post facto principles.

Consistent with the above authority, the denial of CCC placement, even in the factual context described in the original Petition for Habeas relief, constitutes punishment that is more severe than that previously imposed for purposes of implicating the ex post facto clause.  Most importantly, the legislative or regulatory removal of a significant opportunity to enjoy a favorable exercise of discretion in a decision affecting the length and conditions of incarceration violates the Ex Post Facto Clause.  **Lindsey v. Washington, 301 US 397 (1937).**

The ex post facto prohibition is applicable not only to new legislation, but also to new administrative rules adopted by an agency pursuant to delegated authority. See, e.g. **Garner, supra.**  Congress delegated the authority to promulgate rules for the management of federal prison facilities to the Attorney General, 18 USC § 4041(b)(1), who in turn delegated that authority to the BOP.

28 C.F.R. §0.96(o). An administrative rule that is merely interpretive in nature, serves as a guide, or allows for flexible application, is not subject to ex post facto analysis. **Knox v. Lanham, 895 F. Supp. 750, 756 (D.Md. 1995)**, aff'd **76 F3d 377 (4th Cir. 1996)(table)**. However, where the BOP applies its new rule to all inmates and denies them designation to a CCC for a period in excess of the last 10% of their sentence when such designation was either committed to, or otherwise was previously based on existing policy prohibiting the exercise of discretion and must therefore be construed as not being interpretive, such a rule has inflexible application and is subject to ex post facto scrutiny.

Under the facts of the instant case, the new policy implemented pursuant to the DAG's December 2002 directive, it constitutes an inflexible rule that is the equivalent of new legislation for purposes of the ex post facto clause. In support of this proposition the Petitioner relies upon the case of **Love v. Fitz-harris, 460 F2d 383 (9th Cir. 1972)**, vacated as moot, **409 US 1100 (1973)**. In **Love**, the California Department of Corrections interpreted conflicting statutes to allow the defendant to be eligible for parole in 3 years and 4 months. Subsequently, the Attorney General issued a legal opinion reinterpreting the conflicting statutes to require that the defendant serve at least 5 years before being eligible for parole. Recognizing the issue to be "whether [the change] brought about, not by legislative action, but by administrative fiat, [was] within the ex post facto prohibition." **460 F2d at p. 383.** The Court in **Love** distinguished a prior 9th Circuit case where the new rule was supported by Court precedent, noting that "here the Department has changed its interpretation itself," and that "[t]he distinction is crucial." **Love, 460 F2d at p. 385.**[11]

---

(11)   Even though **Love** was vacated as moot **409 US 1100 (1973)**, presumably because more than five years had passed, it was cited with approval by the Supreme Court in **Warden v. Marrero, 427 US 653, 663 (1974)**, and the reasoning of the 9th Circuit can be considered by this Court in deciding the instant Motion.

Thus, "a new administrative interpretation which subjects the prisoner already sentenced to a more severe punishment has the same effect as a new statute lengthening his present term...and...is prohibited by the Constitution." **460 F2d at p. 385.** The Petitioner asserts that the instant case is similar to the circumstances as in **Love.**[12]

Finally, the Respondent's reliance upon **Dominque v. Weld, 73 F3d 1156 (1st Cir. 1996)** is inappropriate. In **Dominhue,** the Plaintiff was transferred to a medium security facility after his removal from work release. He had become ineligible for work release based on a new state regulation governing the treatment and movement of sex offenders from commitment to release. The Plaintiff was required to successfully complete a treatment program, admit his offense, and otherwise obtain approval for a transfer to work release. **73 F3d at p. 1161.** Since the Plaintiff had not completed the required program of prescribed treatment and had not admitted his crime which he had continually denied, the 1st Circuit concluded "that this change in the conditions determining the nature of his confinement while serving his sentence was an allowed alteration in the prevailing 'legal regime' rather than an increased penalty for ex post facto purposes." **73 F3d at p. 1163.** The factual circumstances surrounding the **Dominhue** decision are not applicable to Stern.

For all of the reasons recited above, the BOP's adopting and application of the December 2002 opinion to the Petitioner villates the Ex Post Facto Clause of the U.S. Constitution.

---

(12)   It can certainly be argued that limiting CCC placement imposes a more severe sentence since the conditions and restrictions on an inmate at a halfway house are less onerous than  those imposed at a prison, even those at a Camp Facility such as Camp Devens.

D.          **The New BOP Policy Violates Due Process.**

The Respondent in his Memorandum recites to **Sandin v. Conner, 515 US 472**

**(1995)** as authority to suggest that CCC placement and the prior reliance upon

obtaining such placement is not a liberty interest which is protected by the

due process clause.  The Petitioner contends that the requirement under

**Sandin** is "to assess the nature of the interest at stake and the nature of

the deprivation" prior to any determination that there is protected liberty

interest.

In **Williams v. Moore, 899 F. Supp. 711 (D.D.C.)** Judge Paul Friedman

considered the liberty interests involved in placement in work furlough pro-

grams and in examining the application of **Sandin** stated:

> "[W]ork release, like good time credits protected in **Wolff v. McDonnell, 418 US 539 (1974),** provides substantial be-
> nefits such as expanded freedom, earning capacity, training
> and preparation for community reentry that relate not only
> to terms of confinement itself but to life outside the prison.
> **Sandin,** by contrast, focused on the day-to-day characteristics
> of life inside the prison.  Since the Court in **Sandin** explicitly
> instructs courts to examine the nature of the deprivation rather
> than the language of the regulation, it could be argued that
> work release, unlike administrative confinement, represents a
> liberty interest of 'real substance' that creates a cognizable
> claim under the Due Process Clause." **899 F. Supp. at p. 713
> (emphasis added).**

Thus, upon analysis of the rationale expressed above, it cannot be said

that the right or expectation to a certain amount of CCC placement is not a

'liberty interest' as expressed in **Sandin.**  The authority which the Respondent

relied upon is distinguishable based upon the facts of those cases.[13]

_____

(13)    The Respondent relied upon **United States v. Restpro, 999 F2d 640
(1st Cir. 1996).**  In **Restpro,** the issue of placement into a half-way
house involved an alien.  Based upon his circumstance the Court found
that such placement was not an entitlement because after his custodial
term he would be deported.  In **Asquith v. Department of Correction, 186 F3d
407 (3rd Cir. 1999)** the Plaintiff had completed his 5 year sentence and had
entered into the half-way house where he failed a Breathalyzer test. He was
removed from the half-way house and returned to prison.  Those facts would
not apply to the Petitioner and is not authority to support the contention
that due process has not been violated or a liberty interest not being im-
plicated.

Based upon the above authority and the reasons stated, the denial
of 6 months CCC placement based upon the facts alleged in the original
Petition implicates a 'liberty interest' whereby the rule adopted by the
BOP violates due process and the BOP should be equitably estopped from
denying Stern from obtaining 6 months CCC placement based on the existing
policy at Camp Devens prior to December 2002. All of the factual con-
tentions in the Petition for Writ of Habeas Corpus support the sought
after relief.

## CONCLUSION

Based upon all of the above recited reasons and the legal authority
presented, the Petitioner asks that this Court deny the Motion to Dismiss
and direct the Respondent to file his answer immediately so that the relief
requested in the original Habeas Petition can be granted.

DATED:   JUNE 5 ,2004

RESPECTFULLY SUBMITTED,

DAVID G. STERN
29799-038 UNIT I (CAMP)
FEDERAL MEDICAL CENTER,DEVENS
P.O. BOX 879
AYER, MA. 01432

-23-