# United States Court of Appeals
## For the First Circuit

———————

No. 03-2633

MORRIS M. GOLDINGS,

Plaintiff, Appellant,

v.

DAVID L. WINN and JOHN ASHCROFT,

Defendants, Appellees.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[William G. Young, United States District Judge]

———————

Before

Lipez and Howard, Circuit Judges,
and Lisi,* District Judge.

———————

Morris M. Goldings on brief pro se.
George B. Henderson, II, Assistant United States Attorney,
with whom Michael J. Sullivan, United States Attorney, was on brief
for appellees.
Charles W. Rankin and Peter Goldberger for National
Association of Criminal Defense Lawyers, Criminal Justice Act
Board, and Families Against Mandatory Minimums Foundation, amici
curiae.

———————

September 3, 2004

———————

_____
* Of the District of Rhode Island, sitting by designation.

**LIPEZ**, **Circuit Judge**.  Morris Goldings, an inmate at the Federal Medical Center Devens, in Ayer, Massachusetts, brought this civil action against the Warden of FMC Devens, David Winn, and Attorney General John Ashcroft, challenging a change in policy by the Bureau of Prisons ("BOP") that limited his eligibility for placement in a community corrections center ("CCC") to the last ten percent of his sentence.  He sought declaratory and injunctive relief enjoining the defendants from applying the new policy to him.  The defendants moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court granted the motion, and Goldings appealed.

The policy change that is the subject of this lawsuit was required by a December 13, 2002 Memorandum Opinion from the Department of Justice Office of Legal Counsel, which declared unlawful the BOP's prior practice of placing federal prisoners in community confinement to serve all or part of their sentences.  Goldings argues that the BOP's policy is based on an erroneous interpretation of two statutory provisions of the Sentencing Reform Act of 1984, 18 U.S.C. § § 3621(b) and 3624(c).  According to this interpretation, these two provisions limit the BOP's discretion to place prisoners in CCCs to the lesser of the last six months or ten percent of their terms of imprisonment.  Although the change in policy has generated a flood of lawsuits in the federal district courts, no court of appeals has yet spoken on the validity of the

BOP's new policy.  We do so here and conclude that the new policy
is contrary to the plain meaning of 18 U.S.C. § 3621(b).

## I.

On July 17, 2002, Goldings pled guilty in the United
States District Court for the District of Massachusetts to three
counts of tax fraud, in violation of 18 U.S.C. §§ 1341, 1343, and
1956.  He was sentenced to a thirty-six month term of imprisonment.
On August 28, 2003, Goldings reported to Federal Medical Center
Devens, the correctional facility designated by the Bureau of
Prisons, to commence his sentence.

When Goldings entered federal custody, the BOP considered
prisoners for placement in community correction centers near the
end of their sentences, for up to six months, pursuant to a
longstanding practice.[1]  In addition, the BOP had a policy of
placing in CCCs some low-risk, non-violent federal offenders who
had been sentenced to short periods of imprisonment, including for
periods of more than six months, particularly if the sentencing
court so recommended.

---

[1]Goldings' complaint alleged that the BOP routinely considered
"the vast majority" of inmates for placement in CCCs for periods in
excess of the last ten percent of their sentences.  In their
memorandum filed in support of their motion to dismiss, the
defendants disagreed with Goldings' characterization but
acknowledged that at least some prisoners were placed in CCCs for
periods in excess of ten percent of their terms of imprisonment.
We accept Goldings' characterization as true, as we must in
reviewing the dismissal of a complaint pursuant to Rule 12(b)(6).
Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29
(1st Cir. 2004).

On December 13, 2002, about three-and-a-half months after
Goldings began serving his sentence, the Office of Legal Counsel of
the United States Department of Justice (OLC) forwarded to Deputy
Attorney General Larry D. Thompson an eight-page memorandum that
characterized as "unlawful" the BOP's decades-long practice of
placing certain offenders in CCCs to serve all or part of their
sentences.  It stated, in part:

> Your office has informed us that when a federal offender
> whom the [BOP] deems to be low-risk and nonviolent
> receives a short sentence of imprisonment, BOP often
> places that offender in a community corrections center,
> halfway house, or other form of "community confinement,"
> rather than in prison.  Your office has asked us to
> advise you whether BOP has general authority, either upon
> the recommendation of the sentencing judge or otherwise,
> to place such an offender directly in community
> confinement at the outset of his sentence or to transfer
> him from prison to community confinement during the
> course of his sentence.
> We conclude below that the BOP has no such general
> authority.  As we explain, BOP's statutory authority to
> implement sentences of imprisonment must be construed,
> wherever possible, to comport with the legal requirements
> that govern the federal courts' sentencing order.
> Community confinement does not constitute imprisonment
> for purposes of a sentencing order, and BOP lacks clear
> general statutory authority to place in community
> confinement an offender who has been sentenced to a term
> of imprisonment.  BOP's practice is therefore unlawful.

The OLC Memorandum also specifically concluded that the BOP lacked
statutory authority to transfer inmates to CCCs for more than ten
percent of their sentences, explaining that "[t]he authority
conferred under section 3624(c) to transfer a prisoner to a non-
prison site is clearly limited to a period 'not to exceed six
months, of the last 10 per centum of the time to be served,' and we

-4-

see no basis for disregarding this time limitation." (internal citation omitted).

On December 16, 2002, the Deputy Attorney General adopted the OLC Memorandum and forwarded it to the Director of the BOP, with a memorandum that directed the BOP to "take all steps necessary to ensure that its sentencing decisions are in full compliance with the governing law" and to transfer to prison facilities all offenders residing in CCCs who had more than 150 days remaining of their terms of imprisonment. The memorandum reiterated that

> while BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC prior to his release so as to "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," there are firm restrictions on such transfers. Specifically, the transfer may not exceed the <u>lesser</u> of (i) the last ten percent of the sentence imposed on the offender, <u>i.e.</u>, the period of time in which the offender was committed to the custody of the BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding the time limitations.

<u>Id.</u> at 2 (emphasis in the original).

On December 20, 2002, the Assistant Directors for the General Counsel and Chief Programs Division of the BOP issued a memorandum that directed all BOP officers to implement immediately a "revised procedure" based on the OLC Memorandum. In accordance with that directive, Warden Winn informed the inmates of the FMC Devens Camp that because of the OLC Memorandum, the BOP had changed its procedures for designating inmates to CCCs. He explained that

-5-

all future pre-release CCC designations would be limited to the last ten percent of an inmate's prison term.

After exhausting his administrative remedies, Goldings, who was an attorney prior to his conviction, filed this action pro se in the United States District Court for the District of Massachusetts. His complaint alleged that under the BOP policy in effect at the time of his sentencing, he would have been eligible for transfer to a CCC as early as October 7, 2004, six months before his statutory release date. In contrast, under the new policy, his transfer is not possible until January 7, 2005, when he will have only ten percent of his sentence left to serve. The complaint alleged that the new BOP procedure was incorrect as a matter of statutory interpretation, was established in violation of the notice and comment requirements of the Administrative Procedure Act (APA), and violated Goldings' rights under the Ex Post Facto and Due Process Clauses of the United States Constitution. Goldings sought a declaration that § 3621(b) authorizes the BOP to transfer him to a CCC or halfway house for more than the last ten percent of his sentence, if appropriate, under the BOP's pre-December 2002 policy, and an injunction enjoining the defendants from limiting his eligibility for placement in a CCC to the last ten percent of his sentence based on the OLC Memorandum.

The defendants moved to dismiss Goldings' complaint pursuant to Fed. R. Civ. P. 12(b)(6); on October 23, 2003, the

district court granted the motion.  In a brief rescript, the court stated that it agreed with the reasons expressed by two other district courts in the District of Massachusetts in similar cases; in particular, the court cited the conclusion that "the BOP's revised policy merely corrected an erroneous interpretation of 18 U.S.C. § 3624(c)."  The district court distinguished two other cases decided in the district which "criticized application of the BOP policy" on the ground that those cases "involved assignments to a CCC at the beginning of a defendant's sentence . . . [and] were governed by 18 U.S.C. § § 3621(b) and 3625." By contrast, "Goldings' case . . . involves transfer to a CCC at the end of his sentence, and is accordingly governed by 18 U.S.C. § 3624(c)." Hence, the court found no constitutional or statutory violation and rejected Goldings' alternative arguments concerning equitable estoppel and reasonable expectations.  This appeal followed.[2]

## II.

Our review of the district court's decision granting the defendants' Rule 12(b)(6) motion to dismiss is de novo.  LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998).  At issue in this case is the validity of the defendants' interpretation of 18 U.S.C. § 3621(b) and § 3624(c), the statutory

---

[2]The National Association of Criminal Defense Lawyers, Criminal Justice Act Board, and Families Against Mandatory Minimums Foundation participated in oral argument as amici on behalf of the pro se plaintiff.  We appreciate their assistance.

provisions that govern the BOP's authority to decide where a federal offender must serve all or part of his or her sentence.[3] In particular, we must consider whether the BOP has authority under the statute to transfer a federal prisoner to a CCC prior to the lesser of the last six months or ten percent of his or her sentence.[4]

"We review de novo an agency's construction of a statute that it administers, although subject to established principles of deference." Griffiths v. INS, 243 F.3d 45, 49 (1st Cir. 2003). If "the language of the statute is plain and admits of no more than one meaning" or if the statute's legislative history "reveals an unequivocal answer" as to the statute's meaning, "we do not look to the interpretation that may be given to the statute by the agency charged with its enforcement." Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 858 (1st Cir. 1998) (internal quotation marks omitted); see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

---

[3]We reproduce the text of § 3621(a)-(b) and § 3624(c) in the appendix.

[4]The OLC Memorandum treated community confinement centers, halfway houses, and other community confinement facilities as equivalent for purposes of the issue in this case. We apply this understanding here as well.

**A.**        **18 U.S.C. § 3624(c)**

"As in any case of statutory construction, our analysis begins with the 'language of the statute.'" Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999).  Section 3624(c) sets forth the steps the BOP is required to take at the end of a term of imprisonment to ease a prisoner back into society.  It provides:

> **c) Pre-release custody.** -- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c).  According to the defendants, § 3624(c) authorizes the BOP to transfer inmates to CCCs for up to ten percent of their terms of imprisonment but limits that authority to a "reasonable part, not to exceed six months, of the last 10 per centum of the term to be served."

Goldings agrees that § 3624(c) contains limiting language.  However, he argues that the statute limits only the BOP's statutory obligation to "assure" that a prisoner spends a reasonable part of the last ten percent of his term of imprisonment under pre-release conditions.  He contends that the mandatory directive of § 3624(c) does not limit the discretionary authority committed to the BOP under § 3621(b), pursuant to which the BOP "may designate any available penal or correctional facility" as a

-9-

place of imprisonment and "may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another." The latter statute provides, in relevant part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . . The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).  Under the new policy, the defendants take the view that a CCC is not a "place of imprisonment" for purposes of § 3621(b).  According to the defendants, the discretion that § 3621(b) affords the BOP in determining a prisoner's "place of imprisonment" does not include discretion to place the prisoner in a CCC, either at the outset or at the end of a prisoner's term. Therefore, the defendants claim that § 3624(c) alone authorizes placement in a CCC, limiting that placement to the lesser of the last ten percent or six months of the prisoner's term of imprisonment.

The district court did not address the validity of the defendants' interpretation of § 3621(b) because it concluded that this provision was implicated only by assignments to a CCC at the beginning of a prisoner's sentence.  In the court's view, "Goldings' case . . . involves transfer to a CCC at the end of his sentence, and is accordingly governed by 18 U.S.C. § 3624(c)."  We disagree with the district court that Goldings' claim may be

-10-

resolved on the basis of § 3624(c) alone, without also considering
the applicability of § 3621(b) to CCC placements.  There is no
language in § 3621(b) that limits the BOP's designation authority
to the prisoner's initial place of imprisonment.  It expressly
provides that "[t]he [BOP] may <u>at any time</u> . . . direct the
transfer of a prisoner from one penal or correctional facility to
another." (emphasis added).  Thus, on its face, § 3621(b) permits
the BOP to direct Goldings' transfer to a CCC prior to the last ten
percent of his prison term, unless, as the defendants argue, §
3621(b) does not apply to CCC placements at all because a CCC is
not a "place of imprisonment."  In avoiding this argument of the
defendants, the district court essentially used the limiting
language of § 3624(c) to rewrite the unambiguous language of §
3621(b) so that "at any time" no longer means "at any time," but
rather "only for the lesser of the last six months or ten percent
of a prisoner's term of imprisonment."  The significance of this
rewriting cannot be ignored.  Indeed, the defendants do not argue
on appeal the district court's position that Goldings' case only
requires consideration of § 3624(c).  Thus, we cannot avoid
addressing the relationship between § 3621(b) and § 3624(c).[5]

---

[5]In dismissing Goldings' complaint, the district court relied
largely on the reasoning in Judge Lasker's order in <u>Kennedy</u> v.
<u>Winn</u>, Civ. No. 03-10568-MEL (D. Mass. July 9, 2003) (slip op.),
which held that a habeas corpus petitioner was not entitled to a
particular release date prior to the last ten percent of his term,
to which he had been assigned before the OLC Memorandum.  However,
as the district court explained in <u>Monahan</u> v. <u>Winn</u>, 276 F. Supp. 2d
196, 211 n.11 (D. Mass. 2003), "[t]he <u>Kennedy</u> analysis  . . .

By its plain language, § 3624(c) provides that the BOP "shall take steps" to "assure" that prisoners serve a reasonable part of the last ten percent of their prison terms "under conditions that afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." This language imposes an affirmative obligation on the BOP to take steps to facilitate a smooth re-entry for prisoners into the outside world. It is true that this obligation is qualified. Section 3624(c) does not mandate placement in a CCC prior to release, and it requires the BOP to assure that a prisoner spends the last part of his sentence under pre-release conditions only if practicable. However, a qualified obligation differs from a grant of discretion. Under § 3624(c), the BOP <u>must</u> ensure placement under pre-release conditions except where no such placement is practicable. As the Tenth Circuit has explained, § 3624(c) operates as "a legislative directive focusing on the development of conditions to facilitate an inmate's adjustment to free society, whatever the institution of pre-release confinement." <u>Prows</u> v. <u>Fed. Bureau of Prisons</u>, 981 F.2d 466, 470 (10th Cir.

---

recognized that § 3624(c) did not require that the BOP do anything until Kennedy met the 10 percent marker, and stopped there. Left to consider is whether the BOP was allowed to move Kennedy into community confinement under § 3621(b)." Unlike Kennedy, Goldings does not claim that he is entitled to a particular release date pursuant to § 3624(c); rather, he argues that the BOP's regular practice of transferring prisoners to CCCs at the six-month mark of their sentences was a proper exercise of discretion under § 3621(b) that was unlawfully curtailed by the OLC Memorandum and resultant policy change.

1992).[6]  The provision thus reflects Congress's intent to impose upon the agency a duty to prepare prisoners for reentry into the community, without tying the hands of administrators in deciding where prisoners are to be placed.  The BOP is not free to disregard that duty.  If it did so, judicial relief might be available.  <u>See id.</u> at 649 (suggesting that although prisoner did not have an enforceable right under § 3624(c) to placement in a CCC, he might have had a valid cause of action based on the claim that his placement "constitute[d] a violation of a broader obligation to provide at least some pre-release treatment conducive to successful re-entry into the community, whatever the facility of incarceration").

At the same time, we agree with the Tenth Circuit that § 3624(c)'s mandate "to facilitate the prisoner's post-release adjustment through the establishment of some unspecified pre-release conditions . . . accepts as a premise that the broader statutory scheme concerning the Bureau's general placement authority remains intact and effective." <u>Id.</u> at 469-70.  Thus, while § 3624(c) clearly limits the BOP's discretion <u>not</u> to consider community confinement or other pre-release alternatives at the end

_____

[6]In <u>Prows</u>, a case decided under the old BOP policy, a federal prisoner sought an injunction compelling his placement in a halfway house or CCC on the theory that § 3624(c) mandates nonprison placement for federal prisoners prior to their release.  The Tenth Circuit rejected the prisoner's claim, holding that § 3624(c) does not confer on prisoners an enforceable right to any particular form of pre-release custody.

of a prisoner's prison term, it does not prohibit the BOP from
doing so earlier pursuant to a different grant of discretionary
authority.[7]

B.      **18 U.S.C. § 3621(b)**

        Having determined that § 3624(c) does not prohibit the
BOP from transferring prisoners to a CCC prior to the lesser of six
months or ten percent of the end of their prison terms, we must
next consider whether § 3621(b) confers upon the BOP discretionary
authority to execute such transfers.  We begin by considering the
language of the statute:

>       **(a) Commitment to the custody of the Bureau of Prisons.**
>       -  A person who has been sentenced to a term of
>       imprisonment . . . shall be committed to the custody of
>       the Bureau of Prisons. . . .
>       **(b) Place of imprisonment.** - The Bureau of Prisons shall
>       designate the place of the prisoner's imprisonment.  The
>       Bureau may designate any available penal or correctional
>       facility that meets minimum standards of health and

---

[7]The defendants suggest that a report of the House Committee
deliberations that took place during consideration of a 1990
amendment to § 3624(c) "supports the conclusion that "§ 3624(c)
reflects a strict limitation on the BOP's authority to designate
prisoners to community confinement centers."  The report stated
that under § 3624(c), "the Bureau can only place an inmate in a
Community Correction Center for up to six months or for the last 10
percent of his or her sentence, whichever is shorter" and noted
that the bill that was before the House at that time would have
eliminated the provision's time limitations. 136 Cong. Rec. 27,587-
88 (1990).  However, this report, compiled by a session of Congress
subsequent to the one that enacted § 3624(c) in 1984, provides no
meaningful insight into the legislative intent of the section's
original drafters.  In any event, such legislative history carries
little weight where, as here, a different legislative intent is
clearly expressed by the statute's plain language.  United States
v. Charles George Trucking Co., 823 F.3d 685, 688-89 (1st Cir.
1987).

> habitability established by the Bureau . . . that the
> Bureau determines to be appropriate and suitable,
> considering –
> **(1)** the resources of the facility contemplated;
> **(2)** the nature and circumstances of the offense;
> **(3)** the history and characteristics of the prisoner;
> **(4)** any statement by the court that imposed the sentence–
> **(A)** concerning the purposes for which the sentence to
> imprisonment was determined to be warranted; or
> **(B)** recommending a type of penal or correctional facility
> as appropriate; and
> **(5)** any pertinent policy statement issued by the
> Sentencing Commission pursuant to section 994(a)(2) of
> title 28. . . .
> The Bureau may at any time, having regard for the same
> matters, direct the transfer of a prisoner from one penal
> or correctional facility to another.

Goldings argues that this section provides a broad grant of authority to the BOP initially to designate, and subsequently to transfer, a prisoner to "any available penal or correctional facility." He further claims that a CCC is a "penal or correctional facility" and that, therefore, the BOP has statutory authority to transfer a petitioner to a CCC at any time during his or her term of imprisonment. The defendants do not contend that a community correction center is not a "correctional facility."[8] Instead, they argue that a CCC is not a "place . . . of imprisonment" as required by the first sentence of § 3621(b), and

---

[8]The OLC Memorandum "assume[d] arguendo that a community corrections center, halfway house, or other form of community confinement may constitute a 'penal or correctional facility' under the provisions of 18 U.S.C. § 3621(b)" and conceded that in an earlier opinion the OLC had "declined to draw a distinction between residential community facilities and secure facilities with respect to BOP's authority [to contract with the private sector to operate secure facilities]."

that the second sentence of the provision is limited by the first. Thus, when designating the place where a prisoner will serve all or part of his or her term of imprisonment, the BOP may choose from among the subset of penal or correctional facilities that qualify as places of imprisonment. In other words, a "place of imprisonment" is a penal or correctional facility that is a place of imprisonment.

The defendants' circular definition is unsupported by the plain language of § 3621. Subsection 3621(a) directs "persons" sentenced to serve a term of imprisonment "to the custody of the Bureau of Prisons," thereby rendering them "prisoners" and hence "imprisoned" for the purposes of § 3621(b). Pursuant to § 3621(a), it is not the place of imprisonment that determines whether an offender is imprisoned but the fact and nature of the offender's sentence ("sentenced to a term of imprisonment") and the identity of the custodian (the BOP). See United States v. Cintron-Fernandez, 356 F.3d 340, 346 (1st Cir. 2004) (holding that offender sentenced to a term of imprisonment and subsequently detained in his home was not "imprisoned" because the BOP never assumed custody of the offender as required by 18 U.S.C. § 3621); cf. Koray, 515 U.S. at 63-65 (recognizing that the relevant criteria for determining whether a court-imposed period of pre-trial detention in a CCC or other facility may be credited against a term of

imprisonment is not the type or place of confinement but whether
the defendant is in BOP custody).

The first sentence of § 3621(b) imposes a duty on the BOP
to place those prisoners who have been committed to the custody of
the BOP.  It does not further define "place of imprisonment" and
certainly does not provide that the BOP may not place prisoners in
a CCC.  The second sentence of this subsection gives content to the
first; it explains where prisoners may be placed and grants the BOP
discretionary authority to choose that place of imprisonment from
among "any" available penal or correctional institution.  See,
e.g., United States v. King, 338 F.3d 794, 798 (7th Cir. 2003)
("Under 18 U.S.C. § 3621(b), the BOP is authorized to house a
prisoner . . . anywhere it deems appropriate.") (emphasis added);
Prows, 981 F.2d at 469 n.3 ("Under 18 U.S.C. § 3621(b), the Bureau
of Prisons . . . may direct confinement in any available facility
and may transfer a prisoner from one facility to another at any
time.").  That broad discretion is limited only by the requirement
that the place of imprisonment be a "penal or correctional
facility" and that it "meet minimum standards of health and
habitability."  See Cintron-Fernandez, 356 F.3d at 346 ("According
to 18 U.S.C. § 3621(b), the Bureau is supposed to choose a 'penal
or correctional facility' and determine that the facility meets
enumerated minimum standards of health and habitability.").
Congress could have, but did not, exclude any particular type of

penal or correctional facility from the BOP's designation or transfer authority. Instead, it defined "place of imprisonment" broadly but unambiguously, as "any penal or correctional facility" that meets minimum standards of health and habitability. Hence, the relevant question in considering whether the BOP has discretion under § 3621(b) to transfer Goldings to a CCC is whether a CCC qualifies as a "penal or correctional facility." Cf. id. at 346 n.6 (noting without deciding "the issue of whether [the prisoner's] home could ever qualify as a 'penal or correctional facility' under 18 U.S.C. § 3621(b)"). If it does, then the text of the statute dictates that it also qualifies as a "place of imprisonment." Since a community corrections facility is clearly a corrections facility (and, as noted, the OLC Memorandum did not suggest otherwise), the BOP may place prisoners there prior to the lesser of the last six months or ten percent of their terms of imprisonment.[9]

---

[9]Indeed, the OLC itself previously recognized that any correctional facility, including a community correctional facility, may be a place of imprisonment pursuant to the plain meaning of § 3621(b):

> There is, moreover, no statutory basis in section 3621(b) for distinguishing between residential community facilities and secure facilities. Because the plain language of section 3621(b) allows BOP to designate "any available penal or correctional facility," we are unwilling to find a limitation on that designation authority based on legislative history. Moreover, the subsequent deletion of the definition of "facility" further undermines the argument that Congress intended to distinguish between residential community facilities and other kinds of facilities.

Office of the Legal Counsel, United States Department of

The defendants insist, however, that this reading of § 3621(b) "cannot be squared with the plain meaning of § 3624(c) and elementary rules of statutory construction" because it would "effectively render § 3624(c) a nullity."  In other words, "[i]t simply cannot be true that § 3624(c) limits placement in a CCC to the shorter of six months or to the last 10 percent of the prisoner's term, and also be true that § 3621(b) allows placement in a CCC at any time during the prisoner's sentence."  Defendants' incredulity apparently reflects a refusal to recognize the distinction between a qualified obligation imposed on the BOP and a grant of discretionary authority to it.  As we have already noted, § 3624(c) limits the BOP's obligation to assure that a prisoner spends the last part of his sentence under pre-release conditions, whether in a CCC or elsewhere.  It does not limit the agency's discretionary authority to place a prisoner in a CCC at any other time during the prisoner's sentence.  Therefore, § 3621(b) and § 3624(c) do not, as defendants suggest, "authorize two analytically separate but practically redundant systems for administering community confinement."  Moreover, § 3624(c) directs the BOP to assure that a "prisoner serving a term of imprisonment spend a reasonable part of that term [of imprisonment]" under pre-release conditions, including (expressly) home detention and

---

Justice, Statutory Authority to Contract with the Private Sector for Secure Facilities (Mar. 25, 1992), <u>available at</u> http://www.usdoj.gov/olc/quinlan.15.htm (last visited Aug. 18, 2004).

(impliedly) community confinement. If, as both parties agree, a CCC may be a place of imprisonment during the last ten percent of a prisoner's term of imprisonment, it would be incongruous to conclude that the same CCC may not be a place of imprisonment during any portion of the first ninety percent of that term.

The defendants also find support for their interpretation of § 3621(b) in 18 U.S.C. § 1791(d)(4), which prohibits the provision or possession of contraband in prison and defines "prison," for the purposes of that section, as "a Federal correctional, detention, or penal facility." According to the defendants, "[t]his definition suggests that a 'correctional facility' and 'penal facility' are, first, synonymous, and, second, the equivalent of a 'prison,' where inmates generally live in cells behind bars and – unlike community confinement – are not free to leave for various purposes." We do not understand the logic of this argument. Section 1791(d) explicitly adopts a broad definition of "prison" for the specific purposes of that section, which includes all federal correctional, detention, and penal facilities – just as § 3621(b) defines the different term, "place of imprisonment," broadly to include those same correctional and penal facilities. Nowhere does § 1791(d) define a "penal or correctional facility" as a facility in which inmates are confined to cells behind bars without ever being allowed to leave.

-20-

Indeed, the defendants' interpretation of § 3621 is inconsistent with the Sentencing Reform Act and the ordinary meaning of modern-day imprisonment. The BOP is expressly authorized to allow prisoners to leave their "place of imprisonment" for limited periods of time to work or pursue education in the community "while continuing in official detention at the penal or correctional facility." 18 U.S.C. § 3622(c). This kind of controlled exposure to the community is entirely consistent with the meaning of imprisonment under the statute. See Byrd v. Moore, 252 F. Supp. 2d 293, 301 (W.D.N.C. 2003) (While inmates of CCCs "are able to leave under some limited circumstances as outlined by 18 U.S.C. § 3622, they are not free to come and go as they please. They are 'imprisoned.'"); see also Iacaboni v. United States, 251 F. Supp. 2d 1015, 1029 (D. Mass. 2003) ("In a modern penal system, it is the rare prisoner who is immured behind six-foot-thick walls 365 days a year like some character out of a Dumas romance.").

The defendants further argue that § 3621(b) should be construed in light of 18 U.S.C. § 3563(b)(11) of the Sentencing Reform Act, which authorizes courts to sentence offenders to a term of probation, a fine, or a term of imprisonment. They argue that this section allows courts to require a defendant, as a condition of probation, to "reside at, or participate in the program of, a community corrections facility." 18 U.S.C. § 3563(b)(11). They

further note that placement in a CCC may be authorized as a
condition of a term of supervised release.  See 18 U.S.C. §
3583(a).  Because a sentence of probation is an alternative to, and
may not be imposed at the same time as, a sentence of imprisonment,
18 U.S.C. § 3561(a)(3), and because a term of supervised release
occurs after a term of imprisonment, the defendants argue that a
CCC cannot be a "place of imprisonment."

          Again, the defendants' argument is unpersuasive.  The
Sentencing Reform Act addresses the three types of sentences that
courts may impose; it does not limit the scope of the BOP's
authority to designate the place where an offender sentenced to a
term of imprisonment must serve that sentence.  The fact that
residence at or participation in a program of a CCC may serve as a
condition of probation or supervised release for some offenders
does not mean that a CCC cannot be a place of imprisonment for
other offenders, based on the nature of their sentences and whether
they are subject to the control of the BOP.  See Koray, 515 U.S. at
61, 63 (detention in a CCC subject to the control of the BOP may be
credited against a term of imprisonment under 18 U.S.C. § 3585,
whereas confinement in the same facility as a condition of bail may
not because "defendants who are 'detained' or 'sentenced' always
remain subject to the control of the Bureau").

          Finally, we note that the OLC's interpretation of "place
of imprisonment" as exclusive of CCCs relied primarily on a line of

cases in which courts have held that confinement in a CCC is not imprisonment as that term is used in 5C1.1 of the United States Sentencing Guidelines, which governs the kinds of sentences that may be imposed by courts for offenders within Zone C or D of the Guidelines.  Although we recently joined this line of authority, we cautioned that "our interpretation of imprisonment does not necessarily apply to provisions [of the Sentencing Guidelines] other than § 5C1.1."  Cintron-Fernandez, 356 F.3d at 347 & n.7 (explaining that definitions of terms in the Guidelines "are not designed for general applicability").  Moreover, as the defendants appear to recognize in their brief to this court, to the extent that § 3621(b) conflicts with a section of the Sentencing Guidelines, the Guidelines must yield.  United States v. LaBonte, 520 U.S. 751, 757 (1997).  Also, as we have recognized, the Guidelines are binding only on the courts.  They do not address the BOP's use of its discretion as the custodian of federal prisoners to designate the appropriate place of imprisonment.  See Cintron-Fernandez, 356 F.3d at 347 n.7 & 346 n.6 (holding that "in the context of 5C1.1, the minimum half term of 'imprisonment' cannot be satisfied by home detention or by community confinement" while expressly reserving the question of whether the home can ever qualify as a "penal or correctional facility" which the BOP may designate as a "place of imprisonment" under 18 U.S.C. § 3621(b)).

-23-

We end our consideration of the defendants' arguments here.  Under § 3621(b), the BOP has discretionary authority to designate any available penal or correctional facility that meets minimum standards of health and habitability as the place of a prisoner's imprisonment, and to transfer a prisoner at any time to such a facility.  A community correction center is a correctional facility and therefore may serve as a prisoner's place of imprisonment.  "When as now, the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric, courts need not consult other aids to statutory construction."  United States v. Meade, 175 F.3d 215, 219 (1st Cir. 1999).  Because the intent of Congress is clear in its grant of discretionary authority to the BOP to transfer a prisoner to any available penal or correctional facility, we must give effect to that intent.  Chevron, 467 U.S. at 843.  The defendants' interpretation of § 3621(b) is contrary to the plain meaning of the statute; it is not entitled to judicial deference.[10]

### III.

For the foregoing reasons, we hold that 18 U.S.C. § 3621(b) authorizes the BOP to transfer Goldings to a CCC at any

---

[10] Because the preceding analysis concludes that the BOP's new policy is based on an erroneous interpretation of § 3621(b), we do not reach the issues of whether the defendants' adoption of the policy complied with the requirements of the APA and whether its application to Goldings would violate his rights under the Due Process and Ex Post Facto Clauses of the United States Constitution.

time during his prison term.  The BOP's discretionary authority under § 3621(b) is not subject to the temporal limitations of 18 U.S.C. § 3624(c).  We vacate the order of the district court granting the defendants' motion to dismiss and remand for further proceedings consistent with this opinion.

       **So ordered.**

_____

_____

**APPENDIX**

**18 U.S.C. § 3621. Imprisonment of a convicted person**

**(a) Commitment to the custody of the Bureau of Prisons.** – A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

**(b) Place of imprisonment.** – The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –

**(1)** the resources of the facility contemplated;

**(2)** the nature and circumstances of the offense;

**(3)** the history and characteristics of the prisoner;

**(4)** any statement by the court that imposed the sentence –

**(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

**(B)** recommending a type of penal or correctional facility as appropriate; and

**(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

. . .

**18 U.S.C. § 3624. Release of a Prisoner**

**(c) Pre-release custody.** –– The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to

and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.  The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

...

_____- **Concurring Opinion Follows** -

HOWARD, Circuit Judge (concurring). Whether the Bureau of Prisons' ("BOP") policy ought to be sustained presents a difficult question. I join the court's treatment of this question, and I write separately to emphasize a point that is the decisional fulcrum for me. Beyond this, I also include an observation on the scope of our holding.

We are not presented with a pure question of statutory interpretation. Rather, we are required to decide whether BOP's interpretation of the statute is a permissible reading of the text. See Reno v. Koray, 515 U.S. 50, 62 (1995) (stating that BOP's interpretation must be granted deference unless the "statute cannot bear" its interpretation). If we are unsure of the correct interpretation, we must defer to BOP's reading. Id. at 61. As explained in the lead opinion, the critical question is whether the phrase "the place of . . . imprisonment", as used in § 3621(b), can be read to exclude placement in a Community Correction Center ("CCC"). Ante at 15-16. Since 2002, BOP has interpreted the statute in this way. Id. at 4. Although I think that the question is close, I agree that BOP's construction is, in the end, not adequately supported.

A common type of CCC is a "halfway house" which "provide[s] suitable residence, structured programs, job placement, and counseling, while the inmates' activities are closely monitored." See BOP Program Statement 7310.04 (1998). Prisoners

-28-

residing at most CCCs are permitted to leave the facility for employment and certain other community activities. Id. If we were, as the government urges, to simply apply the common definition of "imprisonment" to decide whether it includes placement in a CCC, the statute would be ambiguous. Imprisonment can be defined as "constraint of a person either by force or by such other coercion as restrains him within his limits against his will." Webster's Third New Int'l Dictionary at 1137 (1993). Under BOP's CCC program, prisoners are free to leave many CCC facilities for certain parts of the day but not at other times. Thus, whether prisoners residing in CCCs are "imprisoned" may conceivably be determined, as the lead opinion says, by whether one is in the custody of BOP, or may depend on the type of CCC involved, or may even arguably depend on the time of day at which the question is asked.[11]

The legislative history of § 3621(b) is also not conclusive. The predecessor version of § 3621(b) provided that prisoners could be assigned or transferred to CCCs. Congress explicitly granted authority to the Attorney General (and via him to BOP) to assign or transfer a prisoner to any "suitable . . .

---

[11]Further confirming the difficulty of determining whether the plain meaning of "imprisonment" encompasses community confinement, courts addressing the question, in other areas of sentencing law, have offered conflicting views on the question. See Iacaboni v. United States, 251 F. Supp.2d 1015, 1030-35 (D. Mass. 2003) (summarizing relevant caselaw).

facility" and defined facility to include "a residential community treatment center."   18 U.S.C. § 4082 (replaced by 18 U.S.C. § 3621(b)); Pub. L. 89-176. See United States v. Tkabladze, No. 0301152, 2003 WL 22836502 at *3 (C.D. Cal. May 16, 2003) (stating that "residential community treatment center" is the old term for a CCC).

As part of the Sentencing Reform Act of 1984, Congress replaced § 4082 with § 3621(b).[12]  The new provision changed the term "facility" to "penal or correctional facility" and deleted the "facility" definition which had expressly included CCCs.   The deletion of § 4082's "facility" definition from § 3621(b) could suggest that Congress intended to redefine "facility" to exclude CCCs.  See Taylor v. United States, 495 U.S. 575, 590 (1990) (stating that the omission of a pre-existing definition often indicates that Congress rejected the definition).

On the other hand, the Senate Judiciary Committee Report accompanying the Sentencing Reform Act strongly suggests otherwise. See S. Rep. No. 225, reprinted in 1984 U.S.C.C.A.N. 3182, 3324. The report emphasized that § 3621(b) was intended to "follow existing law."   Id.   Indeed, the report expressly stated that §

_____

[12]The important change to existing law made by § 3621(b) is that it transferred the custody of prisoners from the Attorney General directly to BOP.   Under § 4082, the Attorney General had custody of federal prisoners but delegated this authority to BOP in the first instance.   See Barden v. Keohane, 921 F.2d 476, 481-82 (3d Cir. 1990).

3621(b) continued BOP's discretionary authority to designate a
suitable place of confinement for each prisoner and that the
proposed provision created only <u>one</u> new requirement (i.e., that BOP
must assign prisoners to facilities that meet minimum health and
habitability standards). <u>Id.</u> at 3324-25. Thus, the report
indicates that, after the enactment of § 3621(b), BOP retained its
pre-existing authority to assign or transfer prisoners to CCCs at
any time during their sentences.

      The subsequent legislative history of § 3621(b), however,
suggests the exact opposite interpretation. Congress reconsidered
§ 3621(b) as part of the debate over the Crime Control Act of 1990.
The original version of this bill proposed amending § 3621(b) to
grant BOP the authority to assign or transfer prisoners to any
"suitable and appropriate institution, facility or program . . . ."
H.R. 5269, 101st Cong. § 1404 (1990). According to the House
Judiciary Committee Report accompanying H.R. 5269, under existing
law, "[T]he Bureau of Prisons c[ould] only place an inmate in a
Community Correction Center for up to six months or for the last 10
percent of his or her sentence, whichever is shorter." H.Rep. 101-
681, <u>reprinted in</u> 1990 U.S.C.C.A.N. 6472, 6546. The report
proceeded to explain that § 1404 broadened BOP's authority in this
regard:

        Section 1404 restores the Bureau of
        Prisons' previously existing authority to
        designate an appropriate place for

> offenders to serve their sentences,
> including Community Correction Centers . .
> . . The Bureau of Prisons has developed
> highly controlled programs in the
> community that provide effective, punitive
> sanctions for certain non-violent
> offenders who at some point in their
> prison sentence would not be appropriately
> incarcerated in a traditional prison
> setting . . . . New Federal drug and crime
> laws and Federal sentencing guidelines
> have resulted in a highly diverse prison
> population . . . . Section 1404 provides
> the Bureau of Prisons with the necessary
> flexibility to manage this increasingly
> diverse Federal inmate population.

1990 U.S.C.C.A.N at 6546. Thus, the authors of the 1990 Crime Control Act interpreted the existing version of § 3621(b) as denying BOP the ability to assign prisoners to CCCs, except during the final portion of their sentence.

Section 1404 was stricken from H.R. 5269 on the floor of the House of Representatives and did not become law. Representative McCollum, the sponsor of the amendment striking the section, explained that he opposed § 1404 because

> the language of the bill as it is now out
> here before us . . . giv[es] a whole lot
> more authority to the Bureau of Prisons
> than we really ought to . . . . The
> language in the bill, without being
> amended, would have effectively allowed
> the . . . Bureau of Prisons to release
> any prisoner for any length of time . . .
> so they would not have had to serve a day
> in prison.

136 Cong. Rec. 27587-88 (1990).  The 1990 law, as enacted, left BOP's authority to assign and transfer prisoners unchanged.  Presumably for at least some members of the 101st Congress, this meant that BOP could not assign or transfer prisoners to CCCs, except at the end of their terms.

This subsequent legislative history is, to say the least, troubling and hard to ignore.  On the other hand, there is reason to heed the Supreme Court's frequent admonition that using subsequent legislative history to interpret a statute is a hazardous endeavor. See, e.g., Doe v. Chao -- U.S.--, 124 S.Ct. 1204, 1212 (2004); Jones v. United States, 526 U.S. 227, 238 (1999); United States v. Texas, 507 U.S. 529, 535 n.4 (1993); Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 650 (1990); but see Sullivan v. Finklestein, 496 U.S. 617, 628-29 n.8 (1990); W. Eskridge & P. Frickey, Law as Equilibrium, 108 Harv. L. Rev. 26, 65 (1994) (stating that the Supreme Court's stated doctrine of declining to rely on subsequent legislative history "cannot be taken at face value").  Were § 3621(b)'s text ambiguous and the contemporaneous legislative history of § 3621(b)'s enactment unilluminating, the legislative history of the 1990 Crime Control Act might well have persuaded me to conclude that BOP's interpretation is entitled to deference.  However, here, where the traditionally preferred methods of interpreting a statute through its plain language and the contemporaneous legislative history

support the court's conclusion, it is appropriate to look past this inconsistent subsequent history.

Ultimately, I am convinced that the plain meaning of the statute can be ascertained by applying the "fundamental principle of statutory construction . . . that the meaning of a word (or phrase) cannot be determined in isolation, but must be drawn from the context in which it is used." See Koray, 515 U.S. at 56 (quoting Deal v. United States, 508 U.S. 129, 132 (1993)).  As the lead opinion explains, "the place of  . . . imprisonment" is a defined phrase when § 3621(b) is read as a whole.  See ante at 17.  The next sentence of the statute states that "the place of . . . imprisonment" can be "any penal or correctional facility."  Id.  This then is the definition of "the place of . . . imprisonment."  Thus, whether "the place of  . . . imprisonment" includes placement in a CCC hinges on whether a CCC is a "penal or correctional facility."  Id. at 18.

The government does not dispute that a CCC is such a facility.  See BOP Program Statement No. 7310.02 (1993) (stating that CCCs meet § 3621(b)'s definition of a "penal or correctional facility"); Office of the Legal Counsel, United States Department of Justice, Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment (Dec. 13, 2002) (assuming, arguendo, that CCC is a penal or correctional facility, but noting that a prior Office of the Legal Counsel opinion had not addressed whether a CCC is a "place of

imprisonment"). Because BOP may assign a prisoner to "any penal or correctional" facility, the text, read as a whole, supports the court's interpretation.

This conclusion is buoyed by § 3621(b)'s contemporaneous legislative history. There is evidence that § 3621(b) was not intended to make substantive changes in BOP's pre-existing authority, including its authority to assign or transfer prisoners to CCCs. See supra at 30-31; see also Barden, 921 F.2d at 481. This history comports with the plain meaning of the statute as outlined in the lead opinion. Although the apparent change in the congressional view of the scope of BOP's authority between 1984 and 1990 remains unexplained, because the contemporaneous legislative history is compelling and that history supports the most plausible reading of the text, it ought to govern over contrary subsequent history. Thus, while the 1990 legislative history demonstrates the close question presented, it does not provide sufficient reason to cast doubt on the lead opinion's conclusion.

But just because the BOP may assign prisoners to CCCs does not mean that it must do so. As our holding states, BOP is authorized to transfer prisoners to CCCs at any time during their prison terms. Ante at 24-25. Consistent with the question presented by this appeal, the lead opinion does not address whether § 3621(b) places any constraints on the manner in which BOP may choose to exercise its discretion to make CCC placements.

-35-

This limited holding is also consistent with the text of §
3621(b).  BOP may designate "any penal or correctional facility."  18
U.S.C. § 3621(b).  In making assignments and transfers, Congress
suggested that BOP consider several factors including the resources
of the facility, the nature and circumstances of the offense, the
history and characteristics of the prisoner, any recommendations by
the sentencing court, and pertinent policy statements from the
Sentencing Commission.  Id.  These factors are non-exclusive and do
not bind or limit BOP's exercise of its discretion.  See Thye v.
United States, 109 F.3d 127, 130 (2d Cir. 1997) ("Decisions to place
a convicted defendant within a particular treatment program or a
particular facility are decisions within the sole discretion of the
Bureau of Prisons."); Falcon v. Knowles, 807 F. Supp. 1531, 1533 (S.D.
Fla. 1992) ("[A]ny approach that puts the judicial branch in charge
of designating the place of confinement for a federal prisoner--no
matter how well justified on utilitarian grounds--collides with . .
. [BOP's] unfettered authority to decide where to house federal
prisoners;); see also Cohen v. United States, 151 F.3d 1338, 1343-44
(11th Cir. 1998) (discussing BOP's wide discretion to assign prisoners
to any correctional facility, despite statutory factors); Yi v.
Federal Bureau of Prisons, No. 03-CV-1493, 2003 WL 21321411 at *2
(E.D. Pa. 2003) (similar).  The Senate report accompanying the
Sentencing Reform Act confirms the wide scope of BOP's discretion:
"The Committee, by listing factors for [BOP] to consider in

determining the appropriateness or suitability of any available facility, does not intend to restrict or limit [BOP] on the exercise of its existing discretion . . . ." 1984 U.S.C.C.A.N. 3325.[13] Thus, nothing in § 3621(b) requires BOP to give any particular level of consideration to an assignment or transfer request.

Even if the statutory criteria for making assignments and transfers could be read to guarantee some sort of individualized treatment, it is apparent to me that BOP would still have the authority to make a categorical rule excluding some or all CCC placements, except as required for end of sentence placements governed by § 3624(c).[14] The Supreme Court recently affirmed BOP's categorical rule making authority in a case concerning the permissibility of another BOP regulation. Lopez v. Davis, 531 U.S. 230, 243-44 (2001). "Even if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress

_____

[13]Indeed, absent compelling circumstances, federal courts should not even review a BOP decision concerning a prisoner placement. 18 U.S.C.C.A.N. at 3325 (citing Darsey v. United States, 318 F Supp. 1346 (W.D. Mo. 1970).

[14]The government contends that one reason that § 3621(b) should be interpreted to prohibit CCC placements is that the Sentencing Guidelines prohibit courts from granting CCC placements to individuals sentenced to terms of imprisonment. U.S.S.G. § 5C.1.1. It is, I agree, inappropriate for us to interpret the meaning of § 3621(b) to assure that it is consistent with subsequent rules promulgated by the Sentencing Commission. Ante at 23. But BOP may decide that, as a matter of sound policy, it should exercise its § 3621(b) discretion in harmony with the Guidelines and thus prohibit inconsistent CCC placements.

clearly expresses an intent to withhold that authority." <u>Id.</u> (quoting <u>Am. Hosp. Assn.</u> v. <u>NLRB</u>, 499 U.S. 606, 612 (1991)).  BOP "is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceeding.'" <u>Id.</u> (quoting <u>Heckler</u> v. <u>Campbell</u>, 461 U.S. 458, 467 (1983)).